TRIBUNAL DE APELACIONES
PANEL VIII

| LIGA DE CIUDADES PR, INC.; ORGANIZACIÓN BORICUÁ DE AGRICULTURA ECO ORGÁNICA, INC., FRENTE UNIDO PRO-DEFENSA DEL VALLE DE LAJAS, INC.; EL PUENTE DE WILLIAMSBURG, INC.; COMITÉ DIÁLOGO AMBIENTAL, INC.; SIERRA CLUB<br><br>Parte Apelante<br><br>v.<br><br>NEGOCIADO DE ENERGÍA, DEPARTAMENTO DE DESARROLLO ECONÓMICO Y COMERCIO, OFICINA DE GERENCIA DE PERMISOS, JUNTA DE PLANIFICACIÓN DE PUERTO RICO, ESTADO LIBRE ASOCIADO DE PUERTO RICO, SECRETARIO DE JUSTICIA<br><br>Parte Apelada | KLAN202400025 | *Apelación,* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br><br>Caso Núm.: SJ2023CV07758<br><br>Sala: 904<br><br><br><br>Sobre: Mandamus |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Monge Gómez, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 26 de febrero de 2024.

Compareció ante este Tribunal la parte apelante, Liga de Ciudades PR Inc., Organización Boricuá de Agricultura Eco Orgánica Inc., Frente Unido Pro-Defensa del Valle de Lajas, Inc., El Puente de Williamsburg, Inc., Comité Diálogo Ambiental, Inc. y Sierra Club (en adelante, las "Organizaciones" o "Apelantes"), mediante recurso de apelación presentado el 9 de enero de 2024. Nos solicitó la revocación de la

Número Identificador
SEN2024_____

*Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, "TPI"), el 25 de octubre de 2023, notificada y archivada en autos al día siguiente. Mediante el referido dictamen, el TPI desestimó el pleito incoado por las Organizaciones, por entender que carecía de jurisdicción sobre la materia.

Por los fundamentos que expondremos a continuación, se *confirma* la *Sentencia* apelada.

**I.**

El caso que nos ocupa se originó cuando los Apelantes presentaron ante el TPI una "**Petición de *Mandamus***" en contra de las siguientes entidades gubernamentales, quienes conforman la parte apelada, a saber: (1) el Negociado de Energía (en adelante, "Negociado") y su comisionado, Lcdo. Edison Avilés Deliz; (2) el Gobierno de Puerto Rico; (3) el Departamento de Desarrollo Económico ("DDEC"); (4) la Oficina de Gerencia de Permisos ("OGPe"); y (5) la Junta de Planificación ("JP") (en adelante y en conjunto denominados, "Apelados"). Mediante la misma, sostuvo que al aprobarse el Plan Integrado de Recursos ("PIR"), en el caso número CEPT-AP-2018-0001, el Negociado le requirió a la Autoridad de Energía Eléctrica ("AEE") que, entre otras cosas, implementara un proceso planificado para la adquisición de energía renovable, a través de requerimientos de propuestas para cumplir con las disposiciones de la política pública energética establecida en la Ley Núm. 17-2019, conocida como la "Ley de Política Pública Energética de Puerto Rico", 22 LPRA secs. 1141 *et seq.* (en adelante, "Ley Núm. 17-2019"). Añadió que, a esos fines, el Negociado ordenó seis (6) procesos de requerimientos de propuestas (denominados "tranches"), a realizarse desde el mes de diciembre de 2020 hasta junio de 2023, a través de los cuales la AEE compraría un mínimo de 3,750 Megawatts de energía renovable y 1,500 MW de almacenamiento antes del mes de agosto de 2025.

Expuso que el Negociado creó un proceso separado para implementar el PIR, no adjudicativo y confidencial, sin divulgar los proyectos, su ubicación y su extensión. Sostuvo que como parte de dicho

proceso, el 2 de febrero de 2022, el Negociado aprobó dieciocho (18) proyectos de energía renovable propuestos por la AEE. Conforme alegado, esos proyectos formaban parte del primer tramo o "tranche" de seis (6) tramos que ordenó el Negociado como parte del PIR aprobado. Debido a que la información sobre estos dieciocho (18) proyectos se había catalogado como confidencial, algunas de las Organizaciones solicitaron acceso a esos documentos públicos. Tras acudir al Tribunal de Primera Instancia y prevalecer en la solicitud de acceso a información pública, los Apelantes lograron tener información básica de estos proyectos, tales como: los nombres, dirección física, ubicación, tamaño del proyecto, tamaño de las fincas, persona o entidad a cargo y megavatios a generar.

Manifestaron que, al comenzar a evaluar la referida información, las Organizaciones advinieron en conocimiento de que la gran mayoría de los proyectos industriales de energía renovable analizados estaban en terrenos de alto valor agrícola y ecológico, en alegada violación al Plan de Uso de Terrenos ("PUT") y la política pública energética y de cambio climático. Preocupados por los graves efectos de estos proyectos, el 2 de septiembre de 2022, se notificó una carta a los Comisionados del Negociado, al Secretario del DDEC, a la Secretaria Auxiliar de la OGPE y al Presidente de la JP para solicitarles que cumplieran con su presunto deber ministerial de identificar los lugares aptos para los proyectos industriales de energía renovable, cumplieran con el PUT y establecieran un proceso que garantizara la protección de los suelos agrícolas y de valor ecológico, hídrico y de paisaje que fueron delimitadas por el PUT para su preservación y protección, así como las reservas naturales y agrícolas. Se solicitó que, además de cumplir con su alegado deber ministerial, respondieran en o antes del 15 de septiembre de 2022 y se calendarizara una reunión para discutir dichos asuntos.

Añadieron que de los dieciocho (18) proyectos del primer (1) tramo ante el Negociado, dieciséis (16) eran proyectos industriales de energía renovable que pretendían ubicarse en Suelos Especialmente Protegidos-Agrícolas ("SREP-A"), en la Reserva Especial Agrícola, según delimitada

para su preservación a perpetuidad en el PUT, protegidas por la Ley Núm. 550-2004, según enmendada, conocida como la "Ley para el Plan de Uso de Terrenos del Estado Libre Asociado de Puerto Rico", 23 LPRA secs. 227n *et seq.* Sobre el particular, expresaron que, del área delimitada en los dieciocho (18) proyectos, aproximadamente el 85% correspondían a terrenos que debían protegerse, según identificados en el PUT como Suelo Rústico Especialmente Protegido. Es decir, de unas 5,961.16 cuerdas de terreno donde se pretendían ubicar los dieciocho (18) proyectos, 5,097.85 cuerdas alegadamente estaban identificadas para su protección y clasificados como Suelo Rústico Especialmente Protegido.

Asimismo, manifestaron que de las 5,961.16 cuerdas de terreno donde se pretendían ubicar los dieciocho (18) proyectos, 4,622.59 cuerdas son parte de la Reserva Especial Agrícola, clasificadas como Suelo Rústico Especialmente Protegido - Agrícola; esto es, aproximadamente el 77.54% donde se pretendían ubicar los proyectos industriales de energía renovable correspondían y eran parte de la Reserva Especial Agrícola. Así pues, puntualizaron que la ubicación de los proyectos industriales en la Reserva Especial Agrícola era incompatible con el PUT. De igual forma, arguyeron que quedaba pendiente la consideración por el Negociado de los proyectos a proponerse en los siguientes cinco (5) tramos o "tranches" requeridos por el PIR y, por ende, la consideración de más de ochenta (80) proyectos industriales de energía renovable, sin que antes se identificara para éstos la ubicación y los lugares aptos.

Luego de la presentación de varias mociones de desestimación por parte de los Apelados, el 28 de septiembre de 2023, las Organizaciones interpusieron "**Petición Enmendada de *Mandamus***", mediante la cual solicitaron lo siguiente:

(a) Que se le ordenara al Negociado a identificar los lugares aptos para integrar todos los proyectos industriales de energía renovable de propuestas del PIR, excluyéndose para dichos propósitos los SREP-A y la Reserva Especial Agrícola;

(b) Que se le ordenara al DDEC a asistir en la identificación de los lugares aptos para viabilizar la integración de energía renovable a la red eléctrica y a someter sus conclusiones al NEPR, excluyéndose para estos fines los SREP-A y la Reserva Especial Agrícola;

(c) Que se le prohibiera a los Apelados la aprobación de proyectos que incumplieran con las disposiciones legales aplicables al caso;

(d) Que se le ordenara a los Apelados a establecer alternativas a los proyectos industriales de energía renovable de los requerimientos de propuestas del PIR a ubicarse en SREP-A, en la Reserva Especial Agrícola, para que se ubicaran en terrenos contaminados o en los techos.

El 9 de octubre de 2023, la OGPe presentó una "**Réplica a Oposición a Solicitud de Desestimación y solicitando la Desestimación de la Petición Enmendada de *Mandamus***". Allí planteó que procedía la desestimación del pleito, toda vez que la "**Petición de *Mandamus***" carecía de alegaciones suficientes contra la OGPe. Por su parte, el 10 de octubre de 2023, el Gobierno de Puerto Rico presentó una "**Moción de Desestimación a Petición Enmendada de *Mandamus***" fundamentada en lo siguiente: (1) falta de jurisdicción del TPI sobre la materia; (2) falta de legitimación activa de los Apelantes; (3) la solicitud de *mandamus* era prematura; (4) ausencia de un deber ministerial incumplido; y (5) falta de parte indispensable. Ese mismo día, el Negociado presentó una "**Solicitud de Desestimación de Petición Enmendada de *Mandamus***". Enfatizó en que las Organizaciones carecían de legitimación activa para presentar la acción de epígrafe e hizo referencia a los argumentos esbozados en su solicitud de desestimación presentada en cuanto a la "**Petición de *Mandamus***" original.

El 10 de octubre de 2023, el foro apelado celebró una *Vista Argumentativa* en la cual las partes reiteraron sus argumentos sobre las mociones dispositivas presentadas por los Apelados. El 20 de octubre de

2023, las Organizaciones presentaron "**Oposición a Solicitudes de Desestimación de Petición Enmendada**". En su escrito, se reiteraron los argumentos presentados durante la vista argumentativa y en la moción en oposición anterior a la enmienda de la petición.

El 25 de octubre de 2023, el TPI emitió *Sentencia* mediante la cual concluyó que conforme a la Ley Núm. 17-2019, *supra*, era el Negociado quien tenía jurisdicción primaria exclusiva en los casos y controversias en los cuales se plantee el incumplimiento con la política pública energética del Gobierno de Puerto Rico. Entendió el foro *a quo* que el análisis sobre si procedía o no que no se establecieran los proyectos industriales de energía renovable en los SREP-A o en la Reserva Especial Agrícola eran exactamente las controversias que el legislador se refería cuando estableció, en el Artículo 6.4 del referido estatuto, la jurisdicción exclusiva sobre el incumplimiento con la política pública energética del Estado. Expuso que la solicitud de los Apelantes implicaba sobreponer su opinión sobre el *expertise* de la entidad designada por ley para tomar las decisiones sobre la política pública del sistema energético.

Ante tales fundamentos, expuso el TPI que procedía la desestimación del pleito por falta de jurisdicción sobre la materia. Asimismo, expresó que aún si la Asamblea Legislativa no hubiera sido clara en cuanto a la jurisdicción del Negociado y el foro de instancia, no procedía el recurso extraordinario del *mandamus*, puesto que existía un recurso adecuado en ley por vía administrativa. Inconformes, el 10 de noviembre de 2023, los Apelantes presentaron "**Moción de Reconsideración**", la cual fue declarada "No Ha Lugar" por el TPI mediante *Resolución* notificada el 13 de noviembre de 2023.

Aún insatisfechas, las Organizaciones presentaron el recurso de apelación que nos ocupa. Le imputaron al foro primario la comisión del siguiente error:

**PRIMER ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR EL MANDAMUS POR FALTA DE JURISDICCIÓN SOBRE LA MATERIA Y CONCLUIR QUE EL NEGOCIADO DE ENERGÍA PROVEE UN RECURSO ADECUADO EN LEY Y TIENE JURISDICCIÓN EXCLUSIVA PARA APLICAR EL PLAN DE**

**USO DE TERRENOS AL INTEGRAR LA ENERGÍA RENOVABLE**.

El 22 de febrero de 2024, los Apelados presentaron sus respectivos alegatos en oposición al recurso de epígrafe.

Con el beneficio de la comparecencia de todas las partes, procedemos a resolver.

**II.**

**A.**

La Regla 10.2 de Procedimiento Civil y su jurisprudencia interpretativa le confiere al demandado la oportunidad de presentar cualquiera de las siguientes defensas: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) **que las alegaciones del demandante dejan de exponer una reclamación que justifique la concesión de un remedio**; y (6) la falta de una parte indispensable. 32 LPRA Ap. V., R. 10.2; Comisión v. González Freyre *et al.*, 211 DPR 579, 614-615 (2023).

Al considerar una moción para desestimar una demanda por ésta dejar de exponer una reclamación que justifique la concesión de un remedio, debe ser evaluada de forma crítica. Ello, puesto que el tribunal está obligado a tomar como ciertos los hechos bien alegados en la demanda. Hecha esta salvedad, el Tribunal interpretará las aseveraciones de la demanda en la forma más favorable para el demandante formulando en su favor todas las inferencias que puedan asistirle. Rivera Sanfeliz, *et al.* v. Jta. Dir. First Bank, 193 DPR 38, 49 (2015). De igual forma, nuestro más alto foro ha establecido que:

> [A] los fines de disponer de una moción de desestimación, estamos obligados a dar por ciertas y buenas todas las alegaciones fácticas de la demanda presentada. Para prevalecer, el promovente de la moción tiene que demostrar que, aun así, la demanda no expone una reclamación que justifique la concesión de un remedio. Esta doctrina se aplica solamente a los hechos bien alegados y expresados de manera clara y concluyente, que de su faz no den margen a dudas. Pressure Vessels PR v. Empire Gas PR, 137 DPR 497, 505 (1994).

Sobre este asunto, el Dr. José Cuevas Segarra expone que "[e]n la moción de desestima[ción] no se trata de poner en duda los hechos alegados en la demanda, sino atacarla por un vicio intrínseco, por ejemplo: insuficiencia, ausencia de parte indispensable, [o] falta de jurisdicción". J.A. Cuevas Segarra, Tratado de Derecho Procesal Civil, Publicaciones JTS, San Juan, Tomo I, 2000, pág. 275.

En fin, "la demanda no deberá ser desestimada a menos que se desprenda con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que puedan ser probados en apoyo de su reclamación". Pressure Vessels PR. v. Empire Gas P.R., *supra*, pág. 505. Consecuentemente, se debe considerar si a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de éste, la demanda es suficiente para constituir una reclamación válida. El Día, Inc. v. Mun. de Guaynabo, 187 DPR 811, 821 (2013); Consejo Titulares v. Gómez Estremera, 184 DPR 407, 423 (2012). A esos efectos, "la privación a un litigante de su 'día en corte' es una medida procedente sólo en casos extremos y que debe usarse solamente en casos claros. Rosario Ortiz v. Nationwide Mutual Insurance Co., 158 DPR 775, 780 (2003).

**B.**

La jurisdicción es el poder o autoridad que ostenta un tribunal para resolver los casos y las controversias que tiene ante sí. Cobra Acquisitions v. Municipio de Yabucoa *et al.*, 210 DPR 384, 394 (2022). Ante ello, los tribunales tienen el deber de, primeramente, analizar en todo caso si poseen jurisdicción para atender las controversias presentadas ante ellos, puesto que estamos llamados a ser fieles guardianes de nuestra jurisdicción, incluso cuando ninguna de las partes invoque tal defecto. Shell Chemical v. Srio. Hacienda, 187 DPR 109, 122-123 (2012). Ello responde a que las cuestiones jurisdiccionales son materia privilegiada y deben resolverse con preferencia a los demás asuntos. García v. Hormigonera Mayagüezana, 172 DPR 1, 7 (2007). La falta de jurisdicción sobre la materia conlleva las siguientes consecuencias inexorablemente fatales: (1) esta falta de jurisdicción no es susceptible de ser subsanada; (2) las partes

no pueden voluntariamente otorgarle jurisdicción sobre la materia a un tribunal, ni el tribunal puede abrogársela; (3) los dictámenes de un foro sin jurisdicción sobre la materia son nulos (nulidad absoluta); (4) los tribunales tiene el ineludible deber de auscultar su propia jurisdicción; (5) los tribunales apelativos, además, deberán examinar la jurisdicción del foro de donde procede el recurso; (6) el planteamiento del foro de donde procede el recurso; y (7) el planteamiento de falta de jurisdicción sobre la materia puede hacerse en cualquier etapa del procedimiento, por cualesquiera de las partes o por el tribunal motu proprio. Allied Mgmt. Group. v. Oriental Bank, 204 DPR 374, 386 (2020).

Como es sabido, los tribunales de Puerto Rico son de jurisdicción general, por lo que pueden entender en cualquier asunto, salvo que se les prive de jurisdicción en una materia particular. Clases A, B y C v. PRTC, 183 DPR 666, 686 (2011); CBS Outdoor v. Billboard One, Inc. *et al.*, 179 DPR 391, 403 (2010). A esos efectos, la doctrina de jurisdicción primaria, también conocida como la doctrina de prelación de jurisdicción, surgió de forma jurisprudencial y, en esencia, procura establecer quién posee la facultad inicial de atender una controversia, si un foro judicial o un ente administrativo. D. Fernández Quiñones, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, 2da Ed., Colombia, Ed. Forum, 2001, pág. 433. La aplicación de esta doctrina presupone una jurisdicción concurrente o simultánea entre el organismo administrativo y el foro judicial. Báez Rodríguez *et al.* v. ELA, 179 DPR 231, 239 (2010). Es decir, la doctrina de la verdadera jurisdicción primaria, como también se le conoce, dilata o suspende la intervención judicial hasta tanto el asunto se dilucide en un foro administrativo, a pesar de que un tribunal tiene jurisdicción para adjudicarlo en primera instancia. CBS Outdoor v. Billboard One, Inc. *et al.*, *supra*, pág. 405. Se trata, pues, de atender una cuestión de prioridad de jurisdicción para promover la armonía entre los tribunales y las agencias administrativas. Colón Rivera *et al.* v. ELA, 189 DPR 1033, 1057 (2013).

Para examinar si la doctrina de jurisdicción primaria es aplicable a determinada situación de hechos, es esencial tomar en cuenta lo dispuesto

por el estatuto habilitador del organismo administrativo o alguna ley especial. Le corresponde al tribunal emprender la tarea de examinar los alcances de la ley habilitadora de la agencia y determinar si es "imprescindible y necesario que se resuelva en favor de que intervenga inicialmente la agencia". Consejo Titulares v. Gómez Estremera *et al.*, 184 DPR 407, 430 (2012). Esta doctrina no constituye una camisa de fuerza y, por tanto, no aplica "cuando '[l]a naturaleza de la causa de acción presentada y el remedio solicitado destacan que no se presentan cuestiones de derecho que exijan el ejercicio de discreción y de peritaje administrativo, es decir, cuando la cuestión que se plantea sea puramente judicial'". Íd., págs. 430-431.

Es decir, la regla general para la aplicación de esta doctrina es que el tribunal retiene su jurisdicción si se trata de una cuestión de estricto derecho, mientras que cede su jurisdicción al foro administrativo en los casos en los que el peritaje de la agencia resulte indispensable para resolver la controversia. Íd. **Ahora bien, en el supuesto de que un mandato legislativo exprese que la agencia tiene facultad única para atender el asunto, estamos ante una situación de jurisdicción exclusiva, por lo cual, no es de aplicación la doctrina de jurisdicción primaria**. Aguadilla Paint Center v. Esso, 183 DPR 901, 932 (2011).

Por tanto, cuando la ley habilitadora de una agencia o una ley especial establece que ésta tiene jurisdicción sobre un asunto, nos encontramos ante una situación a la cual aplica la doctrina de jurisdicción exclusiva y no la de jurisdicción primaria. **Ante ello, la controversia no puede ser atendida primeramente por un tribunal, toda vez que la ley expresamente le confiere jurisdicción exclusiva a la agencia para atender el asunto en primera instancia**. Aunque la doctrina de jurisdicción primaria y la de jurisdicción exclusiva guardan relación entre sí, se distinguen en cuanto a su alcance y naturaleza. Íd., pág. 932. "[L]a jurisdicción exclusiva se trata de situaciones en que no aplica la doctrina de jurisdicción primaria concurrente porque la propia ley aclara que esta última no existe". Íd. **En otras palabras, el propio estatuto establece una**

**jurisdicción exclusiva**. En tales casos estamos frente a un mandato legislativo. "De ahí, que cuando un estatuto le confiere de manera expresa la jurisdicción a un órgano administrativo sobre determinado tipo de asuntos, **los tribunales no tendrán autoridad para dilucidar el caso en primera instancia**. Claro está, la jurisdicción primaria exclusiva no soslaya la revisión judicial posterior de la decisión del organismo". Íd. (Énfasis suplido).

Por consiguiente, cuando por mandato de ley la Asamblea Legislativa le confiere jurisdicción exclusiva sobre un asunto particular a un organismo administrativo, **queda vedada toda autoridad judicial para dilucidar el caso en primera instancia**. Clases A, B y C v. PRTC, *supra*, pág. 685 (énfasis suplido). Consecuentemente, es imprescindible examinar la ley habilitadora de la agencia y otras disposiciones legales aplicables a la materia de la controversia. Báez Rodríguez *et al. v.* ELA, *supra*, págs. 240-241. Por el contrario, si no se desprende de la ley habilitadora o de otro estatuto aplicable la jurisdicción exclusiva del organismo administrativo existe entonces concurrencia de jurisdicción entre los tribunales y la agencia, y el tribunal deberá razonar si procede la aplicación de la doctrina de jurisdicción primaria.

**C.**

El *mandamus* es un recurso que se expide para ordenar a una persona o personas naturales, corporación o tribunal de inferior jerarquía a cumplir o efectuar una actuación que forma parte de sus deberes o facultades. Carrasquillo Román v. Inst. Correccional, 204 DPR 699, 713 (2020); Art. 649 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3421. Su expedición es de carácter discrecional y su procedencia dependerá del tipo de acto que se pretenda ejecutar. Báez Galib y otros v. C.E.E. II, 152 DPR 382, 391-392 (2000). "[S]ólo procede para ordenar el cumplimiento de un deber ministerial, que no admite discreción en su ejercicio, cuando no hay otro mecanismo en ley para conseguir dicho remedio". Acevedo Vilá v. Aponte Hernández, 168 DPR 443, 454-455 (2006). Este recurso extraordinario "no procede cuando hay un remedio ordinario dentro del

curso de ley, porque el objeto del auto no es reemplazar remedios legales sino suplir la falta de ellos". AMPR v. Srio. Educación, E.L.A., 178 DPR 253, 266-267 (2010).

La petición de *mandamus* debe ser evaluada a la luz de varios requisitos, a saber: (1) que el demandado tenga un deber u obligación ministerial impuesto por ley; (2) que el peticionario tenga un interés especial en el derecho que reclama; (3) que el deber de actuar de la agencia y el derecho del peticionario surjan de la ley de forma clara y patente; (4) que el peticionario no tiene otro remedio legal para hacer valer su derecho; y (5) que el tribunal entienda que los fines de la justicia obligan a su expedición, luego de estimar el efecto que tendrá la expedición del auto. 32 LPRA secs. 3421-3423.

Por ello, "[s]u expedición no se invoca como cuestión de derecho, sino que descansa en la sana discreción del foro judicial". Carrasquillo Román v. Inst. Correccional, *supra*, pág. 713. Cónsono con lo anterior, el deber ministerial que se invoca por vía del *mandamus* no puede tratarse de "una directriz o una disposición que permite hacer algo, sino de un mandato específico que la parte demandada no tiene opción para desobedecer". Íd.

**D.**

Mediante la aprobación de la Ley Núm. 57-2014, según enmendada, conocida como la "Ley de Transformación y ALIVIO Energético", 22 LPRA secs. 1051n *et seq.* (en adelante, Ley Núm. 57-2014"), la Asamblea Legislativa persiguió establecer una reforma amplia energética en Puerto Rico, con el fin ulterior de "fomentar la operación y administración de un sistema eficiente y de costos justos y razonables, conscientes de que somos una jurisdicción aislada que tiene que contar con una red eléctrica estable y segura". Exposición de Motivos, Ley Núm. 57-2014, *supra*. Así pues, se adoptó en nuestra jurisdicción el marco legal y regulatorio a través del cual se creó una entidad independiente que instrumentara la transformación del sistema eléctrico. Íd.

De conformidad, se le delegó al Negociado de Energía de Puerto Rico el poder para, entre otras cosas, colaborar "con el Programa de

Política Pública Energética del Departamento de Desarrollo Económico y Comercio y las compañías de energía. Art. 6.3 de la Ley Núm. 57-2014, *supra*, 22 LPRA sec. 1054b (ss). Asimismo, le corresponderá estudiar y tomar "determinaciones sobre la interconexión de energía renovable distribuida y energía renovable a gran escala al sistema de transmisión y distribución, para asegurar el mayor balance y equidad en dicho acceso". Íd. Consistente con dicha delegación de facultades, el Negociado de Energía tendrá **jurisdicción primaria exclusiva** sobre los siguientes asuntos:

> (3) **Los casos y controversias en las que se plantee el incumplimiento con la política pública energética del Gobierno de Puerto Rico según expresada en la "Ley de Política Pública Energética de Puerto Rico" y el derecho vigente**.
> (4) **Los casos y controversias en las que se plantee el incumplimiento con** cualquiera de los mandatos establecidos en la Ley Núm. 83 de 2 de mayo de 1941, según enmendada, conocida como la "Ley de la Autoridad de Energía Eléctrica" y con **cualquiera de los mandatos establecidos en la "Ley de Política Pública Energética de Puerto Rico", en relación con el servicio eléctrico o en relación con asuntos energéticos**. 22 LPRA sec. 1054c (énfasis suplido).

De conformidad con lo anterior, el Artículo 6.4 (c) de la Ley Núm. 57-2014, supra, provee para la presentación de querellas por cualquier parte afectada y con legitimación activa para reclamar por incumplimiento por parte de una compañía de servicio eléctrico con la política pública energética del Gobierno de Puerto Rico, según expresada en la Ley Núm. 17-2019, *supra*, y el derecho vigente. Asimismo, el Negociado podrá atender querellas sobre las transacciones o actos jurídicos relacionados con la compra de energía, entre otras cosas. 22 LPRA sec. 1054c.

De igual forma, dicho estatuto provee para que el Departamento de Desarrollo Económico y Comercio asista en la identificación de las tecnologías y lugares idóneos para viabilizar la "integración de energía renovable a la red eléctrica en atención a los mejores intereses de Puerto Rico, y someter sus conclusiones al Negociado de Energía". Art. 3.4 de la Ley Núm. 57-2014, *supra*, 22 LPRA sec. 1052 (o).

**III.**

Las Organizaciones nos plantean que el TPI erró al decretarse sin jurisdicción sobre la materia, por entender que el foro con dicha autoridad en ley lo es el Negociado. Para sustentar su posición expresan que el Negociado carece de jurisdicción exclusiva, pues la Ley Núm. 57-2014, *supra*, no le reconoce facultad para analizar "sobre si procede o no que se establezcan los proyectos industriales de energía renovable en la Reserva Especial Agrícola".[1] Asimismo, sostienen que "lo que se solicita del Tribunal es que requiera cumplir con un deber ministerial, por una necesidad apremiante, a partir de la lectura integrada y compatible en derecho de la legislación que crea y protege a perpetuidad la Reserva Especial Agrícola y le reconoce el deber de identificar los lugares aptos como parte de la política pública energética".[2] No nos convence dicha postura. Nos explicamos.

No existe controversia sobre el hecho de que la solicitud de *mandamus* presentada por los Apelantes ante el TPI lo que perseguía era: (1) que se identificaran lugares aptos para efectuar los proyectos industriales de energía renovable de propuestas del PIR, excluyéndose para dichos propósitos los SREP-A y la Reserva Especial Agrícola; (2) que se le ordenara al DDEC a asistir en la identificación de los lugares aptos para viabilizar la integración de energía renovable a la red eléctrica y a someter sus conclusiones al NEPR, excluyéndose para estos fines los SREP-A y la Reserva Especial Agrícola; (3) que se le prohibiera a los Apelados la aprobación de proyectos que incumplieran con las disposiciones legales aplicables al caso; y (4) que se le ordenara a los Apelados a establecer alternativas a los proyectos industriales de energía renovable de los requerimientos de propuestas del PIR a ubicarse en SREP-A, en la Reserva Especial Agrícola.

Al examinar las alegaciones de la "**Petición Enmendada de Mandamus**" surge expresamente que el presunto deber ministerial que se

---

[1] *Véase*, Recurso de apelación, pág. 11.
[2] Íd.

reclama de los Apelados está fundamentado en las disposiciones de la Ley Núm. 17-2019, *supra*. Es justo sobre esta realidad –**reiterada por las Organizaciones en el recurso de apelación que nos ocupa**– que convergen las disposiciones estatutarias de la Ley Núm. 57-2014, *supra*. Lo anterior, porque este último estatuto específica y patentemente le confiere **jurisdicción primaria exclusiva** al Negociado para entender en toda controversia **sobre incumplimiento con los mandatos establecidos en la Ley Núm. 17-2019, *supra*, en todo lo relativo al servicio eléctrico o en relación con asuntos energéticos**. 22 LPRA sec. 1054c.

Es decir, si tomamos como ciertas todas y cada una de las alegaciones esgrimidas en la "**Petición Enmendada de *Mandamus***", lo que los Apelantes solicitaron ante el foro apelado no era otra cosa que se cumpliera con un mandato dispuesto en la Ley Núm. 17-2019, *supra*, conocida comúnmente como la "Ley de Política Pública Energética de Puerto Rico", lo cual se traduce en que llevaron una controversia ante el foro judicial cuya autoridad adjudicativa el legislador se la confirió primaria y exclusivamente al Negociado, por medio de la aprobación de la Ley Núm. 57-2014, *supra*.

Es, pues, evidente que estamos ante un caso claro en que existe **un mandato legislativo expreso, a los efectos de que la agencia tiene la facultad única para atender el asunto, por lo cual, es de aplicación la doctrina de jurisdicción primaria exclusiva**. Aguadilla Paint Center v. Esso, *supra*, pág. 932. **Ante ello, la controversia no puede ser atendida primeramente por un tribunal, toda vez que la ley manifiestamente le confiere jurisdicción primaria exclusiva al Negociado para atender el asunto en primera instancia**. No olvidemos que, aunque la doctrina de jurisdicción primaria y la de jurisdicción exclusiva guardan relación entre sí, se distinguen en cuanto a su alcance y naturaleza. Íd., pág. 932. "[L]a jurisdicción exclusiva se trata de situaciones en que no aplica la doctrina de jurisdicción primaria concurrente porque la propia ley aclara que esta última no existe". Íd. Siendo ello así, entendemos que el foro *a quo* actuó correctamente al declararse sin jurisdicción sobre la materia. Mediante la

petición de *mandamus* de epígrafe, los Apelantes pretendieron preterir el trámite administrativo adjudicativo que dispone el estado de derecho vigente.

Por otra parte, discrepamos de las aseveraciones contenidas en el recurso de apelación, a los efectos de que sostener la ausencia de jurisdicción del TPI equivale a dejar a las Organizaciones sin la oportunidad ni el derecho de una adjudicación en los méritos. Un análisis integrado del Artículo 6.4 (c) de la Ley Núm. 57-2014, *supra*, así como del Artículo 6.20 de dicho estatuto, establecen el proceso adjudicativo que se deberá llevar a cabo a nivel del Negociado y, en caso de que exista alguna laguna, aplicarán en toda su extensión la Ley Núm. 38-2017, según enmendada, conocida como la "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico", 3 LPRA secs. 9601 *et seq.*, incluyendo los procedimientos adjudicativos que se conducen en las agencias.

Por tanto, contrario a lo planteado por los Apelantes, confirmar la *Sentencia* apelada no se traduce a dejarlos desprovistos de remedio legal alguno. Simplemente, deberán iniciar un proceso administrativo adjudicativo ante el Negociado y efectuar los planteamientos que entiendan pertinentes sobre la idoneidad de los lugares para erigir los proyectos industriales de energía renovable y de estar inconformes con la determinación final del Negociado, recurrir ante este Tribunal de Apelaciones por medio de un recurso de revisión judicial.

Alusivo a lo anterior, queda demostrado que existe otro mecanismo en ley para conseguir el remedio que persiguieron las Organizaciones con la interposición de la "**Petición Enmendada de *Mandamus***". Ello, de por sí, veda la expedición de dicho recurso extraordinario, pues el objetivo del mismo **no es reemplazar remedios legales, sino suplir la falta de ellos**.

Finalmente, y atinente a los reclamos de naturaleza constitucional, coincidimos con la exposición de la Oficina del Procurador General, en representación del DDEC, al exponer que las Organizaciones no presentaron alegaciones suficientes para establecer un reclamo de esa naturaleza. Es decir, no se desprende de la "**Petición Enmendada de**

*Mandamus*" alegaciones concretas y específicas para poner al TPI, ni a este Tribunal en posición de evaluar cuáles son los reclamos constitucionales planteados ante el foro apelado o cómo sus derechos constitucionales se han visto afectados. Los Apelantes tampoco han demostrado cómo "la acción administrativa constituye una gestión inútil, inefectiva, que no ofrece un remedio adecuado o que causaría un daño irreparable o inminente". Beltrán Cintrón y otros v. ELA y otros, 204 DPR 89, 114 (2020). Por tanto, concluimos que las alegaciones traídas ante el tribunal de instancia sobre la política ambiental incorporada a la Constitución de Puerto Rico no son suficientes para eludir el trámite administrativo que reconoce la Ley Núm. 57-2014, *supra*. Entiéndase, no estamos ante un caso en el que, de su faz, se aducen "hechos terminantes y precisos, justificativos de la opción judicial por el remedio constitucional y de la preterición del cauce administrativo". Íd., pág. 115 (citando a First Fed. Savs. v. Asoc. de Condómines, 114 DPR 426, 438 (1983)).

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral del presente dictamen, se *confirma* la *Sentencia* apelada, por entender que el foro con jurisdicción primaria exclusiva para entender en los méritos de las controversias planteadas lo es el Negociado de Energía.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones