Juanita Rosario Ortiz, peticionaria, *v.* Nationwide Mutual Insurance Co., recurrida.

*Número:* CC-2001-724      *Resuelto:* 4 de marzo de 2003

*Gabriel I. Peñagarícano*, abogado de la parte peticionaria; *Raúl E. García Sánchez*, abogado de la parte recurrida.

EL JUEZ ASOCIADO SEÑOR CORRADA DEL RÍO emitió la opinión del Tribunal.

## I

El 5 de marzo de 2000 el automóvil conducido por la Sra. Juanita Rosario Cruz (en adelante señora Rosario Cruz o demandante peticionaria) fue impactado por el vehículo manejado por la Sra. Isel Aida Ortiz Mathews. El automóvil de esta última, un Hyundai Elantra modelo de

1997, estaba registrado a nombre del Sr. Samuel Ortiz Chevres, un asegurado de la Nationwide Mutual Insurance Company (en adelante Nationwide o demandada recurrida). Estos hechos ocurrieron mientras ambos autos se desplazaban por la carretera estatal número 165, cerca de la cárcel federal en el Municipio de Guaynabo.

Luego del accidente, un representante autorizado de Nationwide se presentó en la residencia de la demandante peticionaria y le ofreció una compensación por los daños resultantes del accidente a cambio de que ésta renunciara a cualquier otra reclamación relacionada con el referido suceso. La señora Rosario Ortiz aceptó la susodicha oferta al firmar un primer documento de relevo el 29 de marzo de 2000, por lo cual recibió un cheque por mil setecientos dólares. Siete días después de este evento, la demandante peticionaria suscribió un segundo relevo, exactamente igual al anterior,[1] por lo cual recibió en esta ocasión un cheque por mil veinte dólares.

No obstante la señora Rosario Ortiz haber firmado los referidos relevos, el 7 de agosto de 2000 presentó una demanda por daños y perjuicios contra Nationwide, en la cual reclama resarcimiento por no menos de cincuenta mil dólares. La señora Rosario Ortiz alegó haber sufrido "trauma en el cuello, espalda, hombros, cintura, rodilla izquierda y brazo derecho".[2]

Posteriormente, el 25 de agosto de 2000 Nationwide

---

[1] En esencia, el documento intitulado Carta de Descargo y Exoneración de Todas Reclamaciones [sic], expresa el descargo de responsabilidad de la siguiente forma:

"... [Por] la presente, por mi [sic] (nosotros) y por mis (nuestros) herederos, albaceas, administradores y cesionarios, total y a perpetuidad descargo (descargamos) y exonero (exoneramos) a la mencionada [Samuel Ortiz y Nationwide] y a todos aquellos directa o indirectamente responsables, de toda y todas reclamaciones y demandas, acciones y causas de acciones, daños, reclamaciones por lesiones, tanto conocidas como por conocer, incluyendo futuras consecuencias de las mismas, costas, pérdidas de servicio y compañía, relaciones conyugales, gastos y compensaciones como consecuencia de, o en algún modo surgidas de cualquier y todas lesiones personales conocidas o por conocer y daños a la propiedad resultante o por resultar por un accidente ocurrido [el 5 de marzo de 2000]." Apéndice, pág. 25.

[2] Véase Apéndice, pág. 8.

presentó una Moción Solicitando Sentencia Sumaria, en la que argumentó que los daños reclamados por la demandante peticionaria habían sido objeto de una transacción extrajudicial, por lo que aplicaba la doctrina de *res judicata*.[3] Oportunamente, la señora Rosario Ortiz presentó su oposición a la Moción Solicitud Sentencia Sumaria, en la que alegó que al momento en que se le visitaba, la demandante peticionaria se hallaba desprovista de asesoramiento y pensaba, *porque así se le hizo creer*, que la compensación que recibió cubría únicamente los daños a su vehículo y un anticipo para solventar los gastos médicos relacionados a los daños corporales que padecía como consecuencia del accidente.[4] Es decir, la demandante peticionaria arguye que el ajustador incurrió en dolo al hacerle creer a ésta algo impreciso con tal de provocar que firmara el relevo. Véase Apéndice, pág. 32.

Así las cosas, el 10 de octubre de 2000 el Tribunal de Primera Instancia (en adelante TPI) emitió una sentencia en la cual declaró con lugar la referida Moción Solicitando Sentencia Sumaria, y desestimó con perjuicio la reclamación de la señora Rosario Ortiz. De este dictamen del TPI, la demandante peticionaria apeló al Tribunal de Circuito de Apelaciones (en adelante TCA), foro que confirmó el fallo apelado mediante Sentencia de 9 de agosto de 2001.[5]

Aún inconforme, el 14 de septiembre de 2001 la señora Rosario Ortiz presentó ante este Tribunal una Petición de

---

[3] La demandante peticionaria explicó que Nationwide alega que mediante el primer pago ésta quedó inmunizada de la totalidad de sus daños personales, y que mediante el segundo, se le indemnizaron los daños a su automóvil. La demandante peticionaria está de acuerdo con la segunda alegación, mas no con la primera debido a que el mismo día de la firma del primer relevo, se le requirió también firmar una autorización para examinar y copiar sus récord médicos. Por ende, alega que existe controversia, ya que no se sabe a ciencia cierta qué daños cubrió cada transacción. Véase Petición de *certiorari*, págs. 6–8.

[4] Además, la señora Rosario Ortiz alega que el ajustador le indicó que si no firmaba no se le entregaría el dinero para reparar el vehículo. También, no se le permitió retener copia de los documentos que firmó. Véase Oposición a Solicitud de Sentencia Sumaria, Apéndice, pág. 31.

[5] Véase Apéndice, pág. 53.

*certiorari*, en la que señaló la comisión de los errores siguientes:

> 1) Erraron el Tribunal de Instancia y el Tribunal de Circuito de Apelaciones al declarar que la demandante había transigido extrajudicialmente su reclamación, por lo que está impedida de reproducirla en el tribunal.
> 2) Erraron el Tribunal de Instancia y el Tribunal de Circuito de Apelaciones al desestimar la demanda por vía de sentencia sumaria, sin tener ante sí toda la verdad del caso y en presencia de una controversia de hecho "bona fide". Petición de *certiorari*, pág. 5.

Mediante Resolución de 2 de noviembre de 2001, le concedimos a la parte demandada recurrida un término de veinte días para que mostrara causa por la cual no debemos revocar la sentencia dictada por el TCA y devolver el caso al TPI, para que dicho foro celebre una vista evidenciaria que resuelva la presente controversia.

El 27 de noviembre de 2001 la demandada recurrida compareció mediante una Moción en Cumplimiento de Orden, en la que expuso, *inter alia*, que en el presente caso no existen controversias de hechos y que, por ende, procedía que se dictase sentencia sumaria.

Contando con los argumentos de las partes, resolvemos.

## II

En reiteradas ocasiones hemos resuelto que si bien la sentencia sumaria constituye un instrumento valioso, es un remedio extraordinario y discrecional que solamente debe concederse cuando no hay una genuina controversia sobre hechos materiales y el tribunal se convence que tiene ante sí la verdad de todos los hechos pertinentes. Véanse: *Audiovisual Lang. v. Sist. Est. Natal Hnos.*, 144 D.P.R. 563 (1997); *Soto v. Hotel Caribe Hilton*, 137 D.P.R. 294 (1994); *Consejo de Tit. C. Parkside v. MGIC Fin. Corp.*, 128 D.P.R. 538 (1991). El propósito de la sentencia sumaria es aligerar la tramitación de un caso y permitir que se

dicte sentencia cuando de los documentos que acompañan la solicitud surge que no existe disputa de algún hecho esencial, sino que lo que resta es aplicar el derecho. *Audiovisual Lang. v. Sist. Est. Natal Hnos.*, supra, pág. 575.

En cuanto a la evaluación de la prueba pertinente, "[c]ualquier duda sobre la existencia de una controversia sobre los hechos materiales, debe resolverse contra la parte promovente". *Audiovisual Lang. v. Sist. Est. Natal Hnos.*, supra, pág. 575. Así pues,

> [e]l sabio discernimiento es el principio rector para su uso porque, mal utilizada, puede prestarse para despojar a un litigante de "su día en corte", principio elemental del debido procedimiento de ley. (Énfasis suprimido.) *Roig Com. Bank v. Rosario Cirino*, 126 D.P.R. 613, 617 (1990).

De hecho, hemos expresado que la privación a un litigante de su "día en corte" es una medida procedente sólo en casos extremos y que debe usarse solamente en casos claros. Véanse: *Metrop. de Préstamos v. López de Victoria*, 141 D.P.R. 844 (1996); *Candal v. CT Radiology Office, Inc.*, 112 D.P.R. 227 (1982); *Moa v. E.L.A.*, 100 D.P.R. 573 (1972).

En atención a estos preceptos, también hemos establecido que

> ... hay litigios y controversias que por la naturaleza de los mismos no hacen deseable o aconsejable el resolverlos mediante una sentencia sumariamente dictada, porque difícilmente en tales casos el Tribunal puede reunir ante sí toda la verdad de los hechos a través de "affidavits" o deposiciones. (Énfasis suprimido.) *Soto v. Hotel Caribe Hilton*, supra, pág. 301.

En esa ocasión incluimos en esta categoría aquellos casos que contienen elementos subjetivos; es decir, controversias en las que

> ... el factor de credibilidad juega un papel esencial, si no el decisivo, para llegar a la verdad, y donde un litigante depende

en gran parte de lo que extraiga del contrario en el curso de un juicio vivo. (Énfasis suprimido.) *Soto v. Hotel Caribe Milton*, supra, pág. 301.[6]

■ Finalmente, aun de no proceder la moción, el tribunal puede dictar una orden en la cual especifique los hechos sobre los cuales no hay controversia y ordenar los procedimientos ulteriores que sean justos en el pleito. Al celebrarse el juicio se considerarán probados los hechos así especificados y se procederá de conformidad. Regla 36.4 de Procedimiento Civil, 32 L.P.R.A. Ap. III.

Conforme a este estado de derecho resolvemos la controversia de autos.

## III

Las controversias fundamentales del caso ante nuestra consideración pueden resumirse en dos asuntos principales: (1) aclarar la intención real de la demandante peticionaria al firmar el relevo, y (2) auscultar las supuestas actuaciones dolosas del ajustador de Nationwide que llevaron a la demandante peticionaria a transigir.

Es decir, no hay duda de que la demandante peticionaria firmó el referido relevo general e incondicional en las fechas antes mencionadas. Sin embargo, ¿bajo qué condiciones las suscribió? ¿Qué entendía ella sobre el verdadero alcance del relevo suscrito? ¿Qué aseveraciones le comunicó el ajustador que la llevaron a tal entendimiento y, en consecuencia, a firmar el relevo? Todas estas interrogantes

---

[6] En *García López v. Méndez García*, 88 D.P.R. 363 (1963), caso en el que se sustenta *Soto v. Hotel Caribe Hilton*, 137 D.P.R. 294 (1994), se alegó *fraude, simulación y engaño* para ocultar bienes de una sociedad legal de gananciales en un procedimiento de divorcio y liquidación. Véase, además, *Rodríguez Meléndez v. Sup. Amigo, Inc.*, 126 D.P.R. 117, 135 (1990), en el cual se resolvió que:

"... [el hostigamiento sexual] requiere un análisis *detenido y cuidadoso* de los hechos, pues están involucrados factores humanos relativos a *actitudes, conductas, móviles, sentimientos y otros, que difícilmente pueden precisarse a menos que se ventilen en un juicio plenario .... Estas interrogantes no podían ser adjudicadas sumariamente*. Procede remitirlas a una vista evidenciaria para su depuración." (Énfasis suplido y en el original.)

son importantes ya que, de llegar a probarse las alegaciones de la señora Rosario Ortiz, el consentimiento de ésta pudo haber estado viciado, lo cual podría anular por dolo el relevo de responsabilidad suscrito. Art. 1217 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3404.[7]

En el caso de autos, la demandante peticionaria alega que su consentimiento al citado relevo estuvo viciado por la conducta fraudulenta del ajustador de Nationwide. Específicamente, arguye que dicho individuo le hizo creer que la compensación que recibiría cubría únicamente los daños a su vehículo y un anticipo para solventar los gastos médicos relacionados a los daños corporales que padecía como consecuencia del accidente, y que, por lo tanto, quedaba sin transigir cualquier otra reclamación resultante del accidente en cuestión. Se le indicó, además, que si no firmaba no se le entregaría el dinero para reparar su vehículo.[8]

Al atender estas alegaciones a la luz de factores como la edad y la poca educación de la demandante peticionaria,[9] así como el poder económico y el conocimiento especializado de Nationwide, entendemos que existe una sustancial

---

[7] Sobre este particular, el Art. 1221 del Código Civil establece que

"[h]ay dolo cuando con palabras o maquinaciones insidiosas de parte de uno de los contratantes, es inducido el otro a celebrar un contrato que, sin ellas, no hubiera hecho." (Énfasis suplido.) 31 L.P.R.A. sec. 3408.

Así pues, para determinar si ha habido dolo en una transacción contractual no se puede actuar en un vacío, por lo que es menester considerar, *inter alia*, la preparación académica del perjudicado, así como su condición social y económica, y las relaciones y tipo de negocios en que se ocupa. Véanse: *Colón v. Promo Motor Imports*, 144 D.P.R. 659, 669 (1997); *Citibank v. Dependable Ins. Co., Inc.*, 121 D.P.R. 503, 519 (1988); *Miranda Soto v. Mena Eró*, 109 D.P.R. 473, 478 (1980). Además, puede ocurrir que la conducta dolosa no se enmarque en un solo hecho, sino del conjunto y la evaluación de circunstancias y manejos engañosos. *Colón v. Promo Motor Imports*, supra, pág. 669.

[8] Véase esc. 4.

[9] En sus alegaciones, la demandante peticionaria expresa que es una septuagenaria, que se desempeñó como costurera durante gran parte de su vida y que es una analfabeta funcional. Indicó, además, que actualmente no trabaja y que sus ingresos no alcanzan los quinientos dólares mensuales. Véase Petición de *certiorari*, págs. 3 y 11.

controversia de hechos en cuanto a si medió dolo en el perfeccionamiento del contrato de la transacción de marras.

Ciertamente, al estudiar este caso es inevitable evocar lo resuelto por este Tribunal hace casi cinco décadas en *Cruz v. Autoridad de Fuentes Fluviales*, 76 D.P.R. 312 (1954). En esa ocasión se trataba de una campesina ignorante y sencilla que fue engañada por un ajustador de seguros inescrupuloso, quien la persuadió de firmar un acuerdo para transigir cualquier reclamación relacionada con la muerte de su hija, al indicarle que no obtendría más de mil dólares en compensación debido a que la niña era menor de edad y que no era jefa de familia. En dicho caso, sin embargo, la señora tuvo el beneficio de una vista en los méritos, de la cual salió a relucir el engaño perpetrado por la aseguradora.([10]) De no haberse ventilado sus alegaciones en una vista en su fondo, se hubiera adjudicado finalidad y presunción de corrección a un acto injusto.

No podemos arriesgarnos a que eso ocurra en este caso. Como hemos expresado anteriormente, existe la necesidad *"de proteger al consumidor en casos de contratos como el de autos, que de ordinario son la parte más débil en este tipo de transacción"*. (Énfasis suplido.) *Colón v. Promo Motor Imports*, supra, pág. 672.

Por ende, en el ejercicio de nuestra discreción, concluimos que dada la complejidad inherente a una determinación que involucra tantos aspectos subjetivos, como establecer intención y dirimir credibilidad,([11]) no debemos decidir la presente controversia sumariamente. No existe en este caso la claridad fáctica necesaria para disponer de éste sin brindarle a la demandante peticionaria su "día en

---

([10]) Al igual que en el caso de autos, en *Cruz v. Autoridad de Fuentes Fluviales*, supra, se trataba de la firma de un relevo de responsabilidad.

([11]) En cuanto a este aspecto, hemos resuelto que al decidir una sentencia sumaria, el tribunal no puede entrar en la credibilidad de los testigos. Véanse: *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 D.P.R. 881 (1994); *López Rivera v. E.L.A.*, 127 D.P.R. 530 (1990).

corte" para que explique y pase prueba sobre sus alegaciones.

*Se expide el auto de "certiorari", se revoca el dictamen del TCA y se devuelve el caso al TPI para que continúe los procedimientos en conformidad con lo aquí dispuesto.*

*Se dictará sentencia de conformidad.*