TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| NOVACANN LABS, CORP.<br><br>APELANTE<br><br><br>V.<br><br><br>CANNALYTICS LLC: BENIGNO T. FERNÁNDEZ GONZÁLEZ: ENRIQUE VILLAVICENCIO CAMACHO; JORGE H. DÍAZ BLANCO; JAVIER DÍAZ ARGIMÓN; NATALIE M. HERNÁNDEZ PÉREZ; COMPAÑÍAS ASEGURADORAS ABC; PERSONAS DESCONOCIDAS ABC; SOCIEDADES LEGALES DE BIENES GANANCIALES ABC; CÓNYUGES ABC<br><br>APELADOS | KLAN202500353 | *APELACIÓN* procedente del Tribunal de Primera Instancia Sala de San Juan<br><br>Caso Núm. SJ2024CV06420<br><br>Sobre:<br>LEY CONTRA EL CRIMEN ORGANIZADO Y LAVADO DE DINERO DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO: LEY DE MONOPOLIOS Y RESTRICCIÓN AL COMERCIO DE PUERTO RICO: DAÑOS Y PERJUICIOS |

Panel integrado por su presidenta, la juez Brignoni Mártir, la jueza Alvarez Esnard, y la jueza Prats Palerm

Brignoni Mártir, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 14 de julio de 2025.

Comparece Novacann Labs, Corp., (Novaccan o la Apelante), y solicita la revocación de la *Sentencia* emitida el 4 de abril de 2025, por el Tribunal de Primera Instancia, Sala de San Juan (TPI o foro primario), notificada el 7 de abril de 2025, que desestimó con perjuicio la *Primera Demanda Enmendada*, presentada por Novacann en contra de Cannalytics, LLC (Cannalytics), Benigno T. Fernández González (señor Fernández González), Enrique Villavicencio Camacho (señor Villavicencio Camacho), Jorge H. Díaz Blanco (señor Díaz Blanco), Javier Díaz Argimón (señor Díaz Argimón) y Natalie M. Hernández Pérez (señora Hernández Pérez), (en conjunto, los Apelados), al amparo del Artículo 1536 del Código Civil, 31 LPRA sec.10801, la *Ley Contra el Crimen Organizado y Lavado*

*de Dinero*, Ley Núm. 33-1978, 25 LPRA sec. 971 *et seq.*, (*Ley contra el Crimen Organizado o Ley Núm. 33-1978*) y la *Ley Antimonopolística de Puerto Rico*, (*Ley Antimonopolística o Ley Núm. 77*) Ley Núm. 77-1964,10 LPRA sec. 287 *et seq.* Mediante el dictamen apelado el foro primario, declaró *Ha Lugar* la *Moción de Desestimación* presentada por los Apelados al amparo de la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. R.10.2, y desestimó la reclamación presentada por la Apelante, al concluir que las alegaciones de la *Primera Demanda Enmendada* no establecieron un patrón de actividad de crimen organizado por parte de los Apelados con el propósito de obtener ventaja económica sobre Novacann; que tampoco dichas alegaciones establecieron que los Apelados hicieran pasar dinero obtenido de alguna actividad ilegal específica como si fuera el resultado de una actividad legal, ni que las actuaciones imputadas de ser ciertas constituyeran competencia desleal.

Por los fundamentos que expondremos a continuación, confirmamos la Sentencia apelada.

I.

El 10 de julio de 2024, Novacann, laboratorio que realiza pruebas de calidad de cannabis medicinal, presentó Demanda en daños y perjuicios en contra del laboratorio de cannabis medicinal Cannaltycs, el señor Villavicencio Camacho, el señor Díaz Blanco, el señor Díaz Argimón y la señora Hernández Pérez, (en conjunto, los Apelados). [1] Tras varios incidentes procesales, el 14 de noviembre de 2024, Novacann presentó *Primera Demanda Enmendada* en la que incluyó dos causas de acción; una por violación a la *Ley contra el Crimen Organizado, supra,* y otra por violación a la *Ley Antimonopolística, supra.*[2] En esencia, Novacann alegó en la *Primera Demanda Enmendada* que los Apelados han incurrido en actos delictivos y fraudulentos en violación a la *Ley del Crimen Organizado,* consistente en manipulación de pruebas de cannabis medicinal y alteración

---

[1] *Véase* páginas 1-24 del Apéndice de la *Apelación.*
[2] *Véase* páginas 189-212 del Apéndice de la *Apelación.* (Entrada Núm. 33 SUMAC)

de rótulos adheridos a los empaques y que dichas actuaciones le han ocasionado daños y constituyen además, competencia desleal al amparo de la *Ley Antimonopolística*. Sobre estos extremos, Novacann alegó haber sufrido daños económicos ante la reducción de su clientela y el volumen de negocio a consecuencia de la alegada alteración y manipulación de resultados de pruebas de calidad del cannabis medicinal y por asegurar resultados favorables en dichas pruebas. En síntesis, Novacann alegó que en junio de 2018, Cannalytics produjo un primer certificado de análisis para cierto cliente, no identificado, cuyo resultado indicó una puntuación mayor de *tetrahydrocannabidol* (THC) a aquellos informados por Novacann con respecto a una flor del mismo lote y que como resultado de ese primer certificado la Apelante perdió un cliente por un periodo de dos años y dos meses. De igual forma, Novacann alegó en la *Primera Demanda Enmendada* que en otras instancias perdió otros clientes, al Cannalytics alegadamente haber garantizado mejores resultados en las pruebas de calidad. Novacann alegó la pérdida de diez clientes, de los cuales seis regresaron o se mantuvieron como clientes intermitentes de la Apelante.[3]

Así las cosas, el 20 de enero de 2025, los Apelados presentaron *Moción de Desestimación de la Demanda Enmendada.*[4] A grandes rasgos estos alegaron que Novacann falló en alegar hechos constitutivos de cada una de las causas de acción, por lo que procedía la desestimación de la *Primera Demanda Enmendada.* Particularmente, los Apelados señalaron que Novacann carece de legitimación activa, al amparo de la *Ley contra el Crimen Organizado*; que no ha alegado ni demostrado la existencia de actos que constituyan una actividad de crimen organizado ni un patrón de conducta delictiva al amparo de dicho estatuto y que tampoco ha alegado hechos para demostrar la existencia de una conspiración o común acuerdo de los Apelados para violar la *Ley contra el Crimen Organizado*. En esencia, sostienen los Apelados que las alegaciones de la *Primera*

---

[3] *Id.*
[4] *Véase* páginas 325-362 del *Apéndice* de la Apelación. (Entrada Núm. 68 SUMAC)

*Demanda Enmendada* no satisfacen el rigor de la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V. R.10.2. Razonan que al tomar en consideración alegaciones de fraude estas deben exponerse más detalladamente, y que aún al considerarlas ciertas no establecen una causa de acción que justifique la concesión de un remedio a favor de Novacann. Asimismo, los Apelados esgrimieron que hay ausencia de un vínculo directo entre la alegada actividad de crimen organizado y un daño concreto y real sufrido por Novacann para entablar su reclamación, por lo que la Apelante carece de legitimación activa. De igual forma, los Apelados solicitaron al foro primario la desestimación de la acción en daños y perjuicios por entender que está prescrita toda vez que está relacionada a actos alegadamente realizados transcurrido más de un año antes de interponer la Demanda.

En respuesta, el 6 de febrero de 2024, Novacann presentó *Oposición* a *Moción de Desestimación de la Demanda Enmendada*[5] Arguye Novacann que al instar una reclamación civil en daños al amparo de la *Ley contra el Crimen Organizado*, el Art.2(b) de dicho estatuto debe interpretarse de manera menos restrictiva que en una acción penal y que es suficiente alegar actividades que de alguna forma estén relacionadas a la venta, posesión y transportación de sustancias controladas Sobre estos extremos, Novacann invocó la normativa expuesta en *Costas Elena* v. *Magic Sport* 213 DPR 523 (2024). Razonó la Apelante que la causa de acción al amparo de la *Ley contra el Crimen Organizado* no requiere mayor especificidad en sus alegaciones. Asimismo, Novacann imputó a los Apelados haber incurrido en violación a la Ley de Sustancias Controladas al alterar y falsificar resultados de pruebas de calidad del producto regulado y argumentó que ello constituía una actividad de crimen organizado relacionada con la posesión, venta y transportación de sustancias controladas. Sobre esos extremos, Novacann arguyó además, que en la demanda hizo alegaciones sobre el patrón de actividad de crimen

---

[5] *Véase* páginas 367-399 del Apéndice de la *Apelación*. (Entrada Núm. 71 SUMAC)

organizado de los Apelados, que según la Apelante consistió de actos de falsificación y alteración de resultados de pruebas de calidad de valores de *tetrahydrocannabidol* (THC), hongos y moho, desde el año 2018, como parte de un esquema que viola la *Ley de Sustancias Controladas*, a los fines de generar un mayor beneficio económico. Finalmente, Novacann esgrimió en la *Oposición* a *Moción de Desestimación de la Demanda Enmendada* que existían alegaciones suficientes para sustentar la causa de acción al amparo del Artículo 3, incisos (b) y (d) de la *Ley contra el Crimen Organizado* y la imputación de lavado de dinero al amparo del inciso (g) del referido Artículo 3 de dicho estatuto, así como alegaciones suficientes que establecen la relación causal entre dichas actividades de crimen organizado y los daños sucesivos y continuos sufridos por Novacann. Esbozó también que por tratarse de daños continuos la reclamación no estaba prescrita.

Por su parte, el 4 de marzo de 2025, los Apelados presentaron *Réplica a Oposición a Moción de Desestimación de la Demanda Enmendada*.[6] Allí esgrimen que Novacann no rebatió los argumentos esbozados en la *Moción de Desestimación* y reiteraron que la Apelante no alega un solo acto que constituya actividad de crimen organizado según definida por el Art. 2(b) de la *Ley contra el Crimen Organizado*, 25 LPRA sec. 971a(b), por lo que carece de legitimación activa; que tampoco estableció un patrón de crimen organizado conforme a dicho estatuto, toda vez que la conducta alegada carece del elemento de continuidad requerido y que Novacannn alega actos dirigidos a una sola víctima, la Apelante, lo cual es insuficiente como cuestión de derecho para establecer la existencia de un patrón al tenor del Artículo 3 (a-c) de dicha ley. 25 LPRA sec. 971b (a-c). Finalmente, los Apelados expusieron que como cuestión de derecho la *Primera Demanda Enmendada* no satisface los elementos constitutivos de las posibles causas de acción bajo las subsecciones del Artículo 3 de la

---

[6] *Véase* páginas 418-438 del Apéndice de la *Apelación.*

*Ley contra el Crimen Organizado*, invocadas por Novacann en su reclamación.

Mediante *Sentencia* emitida el 4 de abril de 2025, notificada el 7 de abril del corriente año, el foro primario desestimó con perjuicio la *Primera Demanda Enmendada* presentada por Novacann [7] Concluyó el foro primario, que Novacann no alegó que los Apelados incurrieran en actividades de crimen organizado según definidas en la *Ley contra el Crimen Organizado*, y que la actividad de crimen organizado objeto del remedio civil que provee el Artículo 3 de la *Ley contra el Crimen Organizado*, no incluye falsificación, alteración y/o manipulación de pruebas de cannabis medicinal, lavado de dinero ni alteración de rótulos adheridos a los empaques de sustancias controladas. Razonó el TPI que al tratarse de un estatuto de naturaleza penal, no se puede ampliar la definición de los delitos que constituyen una "actividad de crimen organizado" según el Artículo 2 (b) de la *Ley contra el Crimen Organizado,* por lo que no procede la inclusión de cualquier actividad prohibida y sujeta a acusación criminal, toda vez que ello atentaría en contra del principio de legalidad. Dispuso además, el foro primario, que aun tomando como ciertas las alegaciones de la *Primera Demanda Enmendada*, el daño que reclama Novacann es el resultado de la alegada alteración o manipulación de pruebas de laboratorio de cannabis medicinal realizadas por Cannalytics, lo cual no constituye una actividad de crimen organizado, según definida por el Artículo 2(b) de la *Ley contra el Crimen Organizado, supra*. De igual forma, puntualizó el foro primario que en la *Primera Demanda Enmendada* Novacann tampoco alegó que los Apelados hubiesen obtenido bienes muebles o inmuebles derivados de una actividad ilegal específica. En cuanto a la alegación de Novacann sobre alteración de rótulos, el TPI concluyó que si bien en dichas alegaciones la Apelante no imputa directamente a Cannalytics haber alterado los rótulos, ello tampoco constituye una actividad de crimen organizado. Finalmente, el foro primario

---

[7] *Véase* páginas 513-540 del Apéndice de la *Apelación*.

reitera que en las alegaciones de la Apelante tampoco se configura un patrón de actividad de crimen organizado por parte de los Apelados por lo que tomando como ciertas todas las alegaciones de la *Primera Demanda Enmendada* Novacann no adujo hechos suficientes para sostener una reclamación por triple compensación al amparo de la *Ley contra el Crimen Organizado* y desestimó la causa de acción al concluir que la reclamación de la Apelante dejaba de exponer hechos que justifiquen la concesión de un remedio.

En lo pertinente a la causa de acción al amparo de la *Ley Antimonopolística, supra,* el foro primario concluyó que conforme a las alegaciones de la *Primera Demanda Enmendada*, Novacann advino en conocimiento de la alegada alteración y manipulación de resultados de pruebas de calidad del cannabis medicinal en junio de 2018, cuando a consecuencia del certificado de análisis emitido por Cannalytics, alegadamente la Apelante perdió el primer cliente, por lo que tomando como ciertas las alegaciones de la demanda su reclamación al amparo de la *Ley Antimonopolística* sobre estos extremos estaba prescrita. Razonó el foro primario que toda vez que Novacann alegó daños sucesivos el término prescriptivo de un año comenzó a decursar en junio de 2018 cuando Novacann advino en conocimiento de la alegada pérdida de un cliente ante su único competidor. Asimismo concluyó el TPI que <u>si bien puede existir una causa de acción bajo el Artículo 1536 del Código Civil, 31 LPRA sec. 10801, como resultado de la alegada violación a una ley especial, dicha causa de acción debe estar predicada en hechos contrarios a la ley especial en la que se ampara, lo que no ocurrió en este caso</u>. Así, concluye el TPI que la *Primera Demanda Enmendada* presentada por Novacann carece de <u>alegaciones que establezcan de manera plausible que Cannalytics y los demás Apelados hubiesen llevado actos para monopolizar el mercado. Consideró además, el foro primario que la licencia de Cannalytics para operar el laboratorio se encuentra suspendida, hecho del cual tomó conocimiento judicial</u>.

Inconforme, Novacann presentó el recurso de epígrafe y señala la comisión de los siguientes errores por parte del foro primario:

**PRIMER ERROR**: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR LAS CAUSAS DE ACCIÓN BAJO LA *LEY CONTRA EL CRIMEN ORGANIZADO , SUPRA,* INSTADAS EN LA DEMANDA ENMENDADA TRAS CONCLUIR QUE LAS ALEGACIONES NO ESTABLECÍAN SATISFACTORIAMENTE UN PATRÓN DE ACTIVIDAD DE CRIMEN ORGANIZADO IMPUTADO A LOS CODEMANDADOS NI DEMOSTRABAN QUE NOVACANN TENÍA LEGITIMACIÓN ACTIVA BAJO DICHO ESTATUTO.

**SEGUNDO ERROR:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR LA CAUSA DE ACCIÓN POR DAÑOS Y PERJUICIOS AL AMPARO DEL ART.1536 DEL CÓDIGO CIVIL, SUPRA, POR **COMPETENCIA DESLEAL E INJUSTA EN VIOLACIÓN AL ART. 3 DE LA LEY ANTIMONOPOLÍSTICA, *SUPRA,*** AL CONCLUIR QUE COMO LA LICENCIA PARA FUNGIR COMO LABORATORIO DE CANNABIS MEDICINAL DE CANNALYTICS, LLC SE ENCUENTRA SUSPENDIDA EN EL PRESENTE, RESULTABA "CONTRASENTIDO HABLAR DE MONOPOLIZACIÓN O RESTRICCIÓN DEL COMERCIO" POR PARTE DE DICHA ENTIDAD DEMANDADA.

**TERCER ERROR:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR LA CAUSA DE ACCIÓN POR DAÑOS Y PERJUICIOS POR ESTAR PRESCRITAS TRAS CONCLUIR QUE ERA DE APLICACIÓN LA DOCTRINA DE LOS DAÑOS SUCESIVOS.

Por su parte, los Apelados comparecieron ante nos, el 27 de mayo de 2025, mediante *Oposición a Apelación*. Entre varios argumentos, los Apelados sostienen que la *Primera Demanda Enmendada* presentada por Novacann deja de exponer una reclamación que justifique la concesión de un remedio en su contra, por lo que no incidió el foro primario al desestimarla, amparo de la Regla 10.2 de Procedimiento Civil, *supra*. Los Apelados invocan la normativa expuesta en *Costas Elena v. Magic Sport,* 213 DPR 523 (2024) que establece que para que las alegaciones al amparo de *Ley contra el Crimen Organizado,* sean suficientes para sostener una reclamación por triple compensación, la reclamación debe incluir hechos que establezcan que: (1) el demandado realizó actividades prohibidas y que (2) hubo daños a la propiedad o negocios del demandante que sean consecuencia de estos actos prohibidos. Razonan que la Apelante alega como causa directa de los daños sufridos que Cannalytics proveyó resultados de pruebas de laboratorio que arrojan una potencia de THC en el cannabis medicinal mayor que los resultados provistos por Novacann;

que dichos valores han sido manipulados y alterados y que este proceder le ha ocasionado daños a la Apelante consistente en que los clientes han optado por realizar sus pruebas de laboratorio a través de Cannalytics y no a través de Novacann. Arguyen los Apelados que aun tomando como ciertas las alegaciones de Novacann estas no establecen que Cannalytis ni los Apelados incurrieran en actividades de crimen organizado ni en un patrón de dichas actividades, según definidas por el estatuto invocado, ya que dichas actuaciones, según alegadas no constituyen actividades de crimen organizado que sean objeto de compensación al amparo de la *Ley contra el Crimen Organizado.* Exponen además, que toda vez que el 23 de diciembre de 2024, la licencia para operar de Cannalytics fue suspendida, Novacann es el único laboratorio con licencia para operar que en la actualidad está proveyendo pruebas de calidad de cannabis medicinal, por lo que no cabe hablar de monopolización del mercado por parte de Cannalytics.

Examinados los escritos de las partes, estamos en posición de resolver.

**II.**

**-A-**

La *Ley Contra el Crimen Organizado*, *supra*, fue promulgada con el fin ulterior de disminuir y eludir el crimen organizado en Puerto Rico, el cual "constituye una de las actividades ilegales más sofisticadas, cuyo modo de operación […] socava grandemente nuestra economía mediante el fraude, la corrupción y la fuerza". *Véase*, *Exposición de Motivos* de la Ley Núm. 33-1978. A estos fines, el estatuto dispone de varios remedios y mecanismos de naturaleza tanto civil como penal.

El Artículo 2 de la *Ley contra el Crimen Organizado* define la actividad de crimen organizado como "cualquier **acto o amenaza** relacionado a asesinato, secuestro, juegos ilegales, leyes relativas a la prostitución, incendio, apropiación ilegal, robo, obscenidad, soborno**,** extorsión o la venta, posesión y transportación de sustancias controladas,

o armas, sujeto a acusación criminal bajo las leyes del Estado Libre Asociado o las leyes de los Estados Unidos de América". 25 LPRA sec.971a(b).

En particular, el Artículo 3 de la referida ley dispone expresamente lo siguiente:

(a) Será ilegal para cualquier persona que haya recibido ingreso derivado directa o indirectamente de cual patrón de actividad del crimen organizado o de la recaudación de una deuda ilegal, en que dicha persona haya participado como autor, según este término se define en el Artículo 35 del Código Penal de Puerto Rico, utilizar o invertir, directa o indirectamente, todo o parte de dicho ingreso, o el producto del mismo, en la adquisición de algún interés en, o en el establecimiento u operaciones de cualquier empresa o negocio.

(b) **Será ilegal que una persona mediante cualquier <u>patrón de actividad de crimen organizado</u> o mediante la recaudación de una deuda ilegal, <u>adquiera o mantenga, directa o indirectamente, cualquier interés en o control de cualquier empresa</u>.**

(c) Será ilegal que una persona empleada por o asociada a cualquier empresa o negocio, participe, directa o indirectamente, en la dirección de los asuntos de dicha empresa a través de un patrón de actividad de crimen organizado o mediante la recaudación de una deuda ilegal.

(d) Será ilegal que una persona se dedique a, participe en, o dirija cualquier patrón de crimen organizado por medio de, o con ayuda de una empresa o negocio. 25 LPRA sec. 971a.

(Énfasis suplido).

El Artículo 2 de la referida ley dispone que el crimen organizado comprende cualquier violación a los incisos (a), (b), (c), o (d) de su Artículo 3. 25 LPRA sec. 971a.

En lo pertinente, la Ley Núm. 33-1978, *supra*, describe el lavado de dinero como cualquier "transacción financiera que envuelva bienes ilegales o cuya transacción está destinada, en todo o en parte, a obtener beneficio de esa transacción o dejar de informar ingresos provenientes o producto de dicha transacción financiera". *Íd.* Respecto a las penalidades que conlleva este tipo de delito, dispone que las personas que violen los incisos (a), (b), (c) y (d) del Artículo 3 del estatuto, incurrirán en delito grave y de ser halladas culpables, serán sancionadas con pena de reclusión por un término fijo de 15 años. 25 LPRA sec. 971d.

En lo concerniente a la controversia ante nuestra consideración, el Artículo 9 de la Ley Núm. 33-1978, *supra*, fija los remedios y mecanismos civiles disponibles para combatir las actividades de crimen organizado en Puerto Rico. Específicamente, el Artículo 9 inciso (d) establece que "[c]ualquier persona que sufra daños en sus negocio o propiedad por razón de una violación a las disposiciones del Artículo 3 de esta ley podrá demandar en el tribunal de justicia correspondiente y podrá recobrar compensación triple por concepto de los daños sufridos y los gastos incurridos en la demanda, incluyendo una suma razonable por concepto de honorarios de abogado. 25 LPRA sec. 971h.

El Art. 10 de esta ley dispone que "[l]os remedios o acciones de naturaleza civil para impedir violaciones a esta ley podrán instarse, independientemente de la acción penal u otro remedio disponible en ley". Art. 10 de la Ley Núm. 33, *supra*, 25 LPRA sec. 971i. Es decir que las acciones de naturaleza civil para impedir que se viole la mencionada ley pueden instarse independientemente de las acciones penales o demás remedios disponibles en nuestro ordenamiento legal. 25 LPRA sec. 971i.

De otra parte, a los fines de enfrentar la problemática social generada por el crimen organizado, el Congreso de los Estados Unidos aprobó la Ley Púb. Núm. 91 de 15 de octubre de 1970 (84 Stat. 922), mejor conocida como el "*Racketeer Influenced and Corrupt Organization Act*," 18 USC secs. 1961 *et seq.* (en adelante, "RICO Act"). El objetivo de esta legislación es erradicar este mal, reforzando las herramientas legales relacionadas con la recolección de pruebas, estableciendo nuevas prohibiciones penales e implementando medidas adicionales para contrarrestar las actividades ilícitas de quienes participan en el crimen organizado. Véase *Costa Elena y otros v. Magic Sports y otros*, 213 DPR 523, 539 (2024).

La Ley Núm. 33-1978, *supra*, es en esencia, muy parecida al de su equivalente a nivel federal, el RICO Act. *Pueblo v. Meliá León*, 143 DPR 708, 743 (1997). Ello así debido a que nuestro estatuto se encuentra

inspirado en objetivos similares a los que fundamentaron la legislación federal. *Costas Elena y otros v. Magic Sports y otros*, *supra*, pág. 539. Por tal razón, nuestro Tribunal Supremo ha expresado que la jurisprudencia interpretativa del texto federal nos sirve como base de referencia para delinear los alcances de nuestra ley, siempre que al hacerlo no se frustren los objetivos establecidos por la Asamblea Legislativa, ni se viole ningún derecho protegido por la Constitución de Puerto Rico. *Íd.*

En *Sedima*, *S.P.R.L. v. IMREX Co.,* 473 US 479 (1985), el Tribunal se enfrentó a la incógnita de si para que proceda la triple compensación es requisito *sine qua non* contar con una convicción bajo las disposiciones de la RICO Act. *Costas Elena y otros v. Magic Sports y otros*, *supra*. Al establecer la doctrina vigente sobre este tópico, el Tribunal indicó:

> In sum, we can find no support in the statute's history, its language, or considerations of policy for a requirement that a private treble-damages action under § 1964(c) can proceed only against a defendant who has already been criminally convicted. To the contrary, every indication is that no such requirement exists. Accordingly, the fact that Imrex and the individual defendants have not been convicted under RICO or the federal mail and wire fraud statutes does not bar Sedima's action. (Negrilla suplida). Sedima, S.P.R.L. v. Imrex Co., supra, pág. 493.
>
> *Id.*

El Tribunal Supremo de Estados Unidos estableció que para que proceda una reclamación de triple compensación al amparo de la RICO Act solamente se requiere que: (1) el demandado participe en una actividad prohibida por la sec. 1962 de la RICO Act y que (2) tal participación provoque un daño a la propiedad o negocio del demandante. *Sedima, S.P.R.L. v. Imrex Co.,* supra, pág. 495. *Véase,  Costas Elena y otros v. Magic Sports y otros*, *supra*.

Así, en *Costas Elena y otros v. Magic Sports y otros*, *supra,* el Tribunal Supremo concluyó que la propia *Ley contra el Crimen Organizado* establece que los remedios o acciones de naturaleza civil provistos por este estatuto podrán instarse, independientemente de la acción penal u otro remedio disponible en ley y que la validez de una reclamación civil de compensación triple por concepto de daños al amparo de la Ley contra el Crimen Organizado no está atada directamente al resultado de una acción

penal relacionada, por lo que para que proceda esta causa de acción no es requisito *sine qua non* contar con una convicción criminal bajo la mencionada ley.

Ahora bien, la normativa jurisprudencial de *Costas Elena y otros v. Magic Sports y otros*, *supra* no exime al demandante en una acción civil amparada en una alegada violación a la *Ley de Crimen Organizado*, de alegar en la demanda hechos constitutivos de actividad de crimen organizado por parte del demandado, según definidas en el Artículo 2 del estatuto. Toda vez que nuestro estatuto, la *Ley contra el Crimen Organizado,* se encuentra inspirado en objetivos similares a los que fundamentaron la legislación federal,  para que proceda una *reclamación* de triple compensación al amparo de la *Ley contra el Crimen Organizado,* al igual bajo la RICO Act, se requiere que: (1) el demandado participe en una actividad prohibida por la sec. 1962 de la RICO Act (En nuestro caso por el Artículo 2 de la Ley Núm. 33 -1978) y que (2) tal participación provoque un daño a la propiedad o negocio del demandante. *Sedima, S.P.R.L. v. Imrex Co.,* supra, pág. 495. *Véase, Costas Elena y otros v. Magic Sports y otros*, *supra.*

**-B-**

Conforme surge de la *Exposición de Motivos* de la *Ley Antimonopolística* de Puerto Rico, 10 LPRA sec. 257, *et seq.*, (en adelante *Ley Antimonopolística* o *Ley Núm. 77*), esta fue aprobada en aras de proteger y asegurar los beneficios de la libre competencia para nuestro país, así como para sus pequeños comerciantes. Se indica además, que "en la aplicación de esta medida, deberá tenerse en cuenta que su objetivo final es proscribir males que amenazan la economía general de la Isla, sin que se intente desalentar el progreso económico ni el fomento de éste por agencias del Gobierno, ni menoscabar la reglamentación económica que proveen otras leyes".

La *Ley Antimonopolística*, *supra*, 10 LPRA sec. 257 *et seq.*, tiene como propósito …evitar "la confabulación entre firmas para dominar el

14

mercado, [el] acaparamiento de materias primas, [los] aumentos indebidos en los precios resultantes de una posición monopolística, [las] prácticas discriminatorias en las relaciones con clientes [y la] concentración extrema de la actividad económica y de la riqueza en algunos grandes consorcios de empresas." *Véase Aguadilla Paint Center v. Esso*, 183 DPR 901, 924 (2011), citando con aprobación a *Colón Cabrera v. Caribbean Petroleum*, 170 DPR 582, 594 (2007). En específico, el Artículo 3(a) de la Ley de Monopolios, declaró ilegales "[l]os métodos injustos de competencia, así como las prácticas o actos injustos o engañosos en los negocios o el comercio." 10 LPRA sec. 259(a).

El Artículo 2 de la *Ley Antimonopolística*, 10 LPRA sec. 258, promulga, en síntesis, la ilegalidad de todo contrato, o conspiración para restringir irrazonablemente los negocios o el comercio. Relacionado a lo anterior, el Artículo 2 de la *Ley Antimonopolística, supra*, dispone tres requisitos "que se tienen que establecer para demostrar una infracción a esta disposición: (1) deberá existir algún contrato, combinación o conspiración entre dos o más entidades separadas (2) el cual restringe irrazonablemente los negocios o el comercio (3) en Puerto Rico o en cualquier sector de éste." *G. & Supp. Corp. v. S. & F. Systs., Inc.*, 153 D.P.R. 861, 870, (2001), citando a *ressure Vessels P.R. v. Empire Gas P.R.*, 137 DPR 497, 509 (1994). En cuanto al requisito sobre restricción irrazonable, los foros judiciales de Estados Unidos han desarrollado dos métodos de análisis: (1) el análisis de irrazonabilidad per se ("the per se rule") o (2) la regla de la razonabilidad ("the rule of reason"). Bajo el análisis de irrazonabilidad se condena la restricción comercial impugnada sin examinar su propósito o hacer un extenso análisis de su efecto en el mercado y el daño a la competencia. *G.G. & Supp. Corp. v. S. & F. Systs., Inc.,* 153 DPR 861, 870 (2001). La regla de la razonabilidad requiere de un análisis extenso y ponderado de todas las circunstancias del caso específico. Por ello, entre los elementos a evaluar bajo dicho criterio se encuentran: (a) estudiar los hechos particulares del negocio al que se le

está aplicando la restricción, incluyendo una definición de los productos que compiten actualmente o podrían competir en el futuro; (b) la composición y comportamiento del mercado; (c) la condición del negocio o mercado antes y después de la restricción; (d) la naturaleza de la restricción; (e) el efecto real o probable de la restricción. *G.G. & Supp. Corp. v. S. & F. Systs Inc., supra a la* pág. 871.

La Ley Antimonopolística, *supra*, no define expresamente las prácticas que constituyen métodos injustos de competencia y delegó a la Oficina de Asuntos Antimonopolísticos la facultad de proscribir actos o prácticas específicas mediante reglas y reglamentos. *Véase*, Art. 3(b) de la Ley de Monopolios, 10 LPRA sec. 259(b) y *OAM v. Abarca Health*, Opinión de 13 de marzo de 2025, 2025 TSPR 23, 215 DPR ___ (2025). Cónsono con esta disposición, se creó el Reglamento Núm. 2648 de 29 de mayo de 1980, conocido como *Reglamento sobre Competencia Justa Núm. VII* proscribiendo prácticas y métodos injustos de competencia y enumerando actos que constituyen métodos injustos de competencia (Reglamento Núm. 2648). Este Reglamento contiene una lista no exhaustiva de actos o métodos de competencia injusta. A su vez, en su Art. III denominado "Métodos injustos de competencia" prohíbe, entre otras: (1) toda violación -o conducta análoga a una violación- de cualquier legislación antimonopolística que aplique a Puerto Rico; (2) cualquier conducta que viole las disposiciones estatutarias de carácter civil o penal que regulan o afectan directa o indirectamente, el comercio, los negocios o la competencia, y (3) cualquier conducta que viole el espíritu de la ley antimonopolística. Art. III del Reglamento Núm. 2648.

Sobre estos extremos en *OAM v. Abarca Health, supra,* el Tribunal Supremo interpretó lo siguiente:

> "[L]o que puede constituir competencia injusta, según el Reglamento Núm. 2846, se textualizó con amplitud. Llama la atención que según el mencionado cuerpo reglamentario una violación del Art. 3 de la Ley Antimonopolística, supra, puede ser "cualquier conducta que viole las disposiciones estatutarias de carácter civil o penal que regulan o afectan directa o indirectamente, el comercio, los negocios o la competencia". (Negrilla Suplida). Art. III del Reglamento Núm. 2846. Lo anterior implica que el esquema actual contempla como infracciones

administrativas actos que a su vez pueden ser constitutivos de delito. De igual modo, vemos que el Art. 3 de la ley en discusión y el procedimiento administrativo allí dispuesto, puede interrelacionarse con otros estatutos. Es decir, **la violación de otro estatuto puede considerarse también una práctica violatoria del Art. 3 de la Ley Núm. 77, supra**.

(Énfasis suplido).

A su vez, el Artículo 4 de la Ley Antimonopolística, dispone lo siguiente en cuanto a las prácticas monopolísticas:

Toda persona que monopolice o intente monopolizar o que se combine o conspire con cualquier otra persona o cualesquiera otras personas con el objeto de monopolizar cualquier parte de los negocios o el comercio en el Estado Libre Asociado de Puerto Rico, o en cualquier sector de éste, será considerada culpable de un delito menos grave. 10 LPRA sec. 260.

En síntesis, el precitado artículo prohíbe la monopolización unilateral, la tentativa de monopolización y la monopolización por combinación o conspiración. *Pressure Vessels P.R. v. Empire Gas P.R.*, supra, pág. 513. En términos generales, la monopolización ilegal se define como la posesión de poder monopolístico (poder para controlar precios o excluir la competencia), acompañado de un elemento de deliberación que consiste en una intención general o propósito de adquirir, usar, mantener o preservar dicho poder. *Íd.* En particular, los intentos de monopolización se manifiestan mediante ciertas prácticas exclusionarias o conducta predatoria que, aunque no alcanza niveles monopolísticos, constituyen una tentativa ilegal de monopolización. Lo anterior se demuestra cuando: 1) unilateralmente o en combinación con otro tenía una intención especifica de monopolizar un mercado (controlando precios o destruyendo la competencia) o; (2) incurre en conducta anticompetitiva o predatoria dirigida hacia tal propósito y; (3) existe alguna probabilidad de que dicha tentativa tenga éxito. *Íd.*

Pertinente a la controversia ante nos es menester destacar que, en casos en los cuales se alegan violaciones a las leyes antimonopolísticas, se ha resuelto reiteradamente que el criterio para determinar si la demanda debe desestimarse, por no exponer una causa de acción que justifique la concesión de un remedio, es el mismo que en todos los demás casos. *Pressure Vessels P.R. v. Empire Gas P.R.*, 137 DPR 497, 506 (1994).

**-C-**

La Regla 10.2 de Procedimiento Civil, *supra*, establece que una parte demandada puede presentar una moción de desestimación en la que alegue las defensas siguientes: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) dejar de exponer una reclamación que justifique la concesión de un remedio, y (6) dejar de acumular una parte indispensable. *Costas Elena y otros v. Magic Sports y otros*, *supra*; *González Méndez v. Acción Soc.,* 196 DPR 213, 234 (2016). Al resolver una solicitud de desestimación fundamentada en que se deja de exponer una reclamación que justifica la concesión de un remedio, los tribunales están obligados a tomar como ciertos todos los hechos bien alegados en la demanda y que hayan sido aseverados de manera clara y concluyente. *Id.*; *Eagle Sec. Police, Inc.* v. *Dorado*, 211 DPR 70, 78 (2023); de *Cobra Acquisitions, LLC v. Municipio de Yabucoa*, 210 DPR 384, 396 (2022); *González Méndez v. Acción Social et al*., supra, pág. 234. Luego, debe determinar si, a base de esos hechos que aceptó como ciertos, la demanda establece una reclamación plausible que justifique la concesión de un remedio. R. Hernández Colón, Derecho Procesal Civil, 6ta ed., San Juan, LexisNexis, 2017, pág. 307. La norma exige evaluar las alegaciones conjuntamente para auscultar si a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de este, la demanda es suficiente para constituir una reclamación válida. *Eagle Sec. Police, Inc. v. Dorado, supra*, pág. 78; *Cobra Acquisitions, LLC v. Municipio de Yabucoa*, supra, pág. 396; *González Méndez v. Acción Social et al., supra*, pág. 234.

Por lo tanto, para que un demandado prevalezca al presentar una moción de desestimación al amparo de la Regla 10.2 (5), supra, debe establecer con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de derecho que pueda ser probado en apoyo a su reclamación, aun interpretando la demanda de la forma más liberal posible a su favor. *Costas Elena y otros v. Magic Sports y otros*, *supra; Ortiz*

*Matías v. Mora Dev.*, 187 DPR 649, 654 (2013). *Véase*, J. Cuevas Segarra, Tratado de Derecho Procesal Civil, Tomo II, Publicaciones JTS, 2011, pág. 528. De hecho, en el pasado hemos expresado que la privación a un litigante de su "día en corte" es una medida procedente solo en casos extremos. *Rosario v. Nationwide Mut.,* 158 DPR 775, 780 (2003). Ahora bien, si tras este análisis el Tribunal aún entiende que no se cumple con el estándar de plausibilidad, entonces debe desestimar la demanda, pues no puede permitir que proceda una demanda insuficiente bajo el pretexto de que se podrán probar las alegaciones conclusorias con el descubrimiento de prueba. *Id.* R. Hernández Colón, supra, pág. 307.

**III.**

Es la contención principal de Novacann que los Apelados, particularmente Cannalytics, incurrieron en un patrón de actividad de crimen organizado que consistió de actos de falsificación y alteración de resultados de pruebas de calidad de valores de *tetrahydrocannabidol* (THC), hongos y moho, desde el año 2018, como parte de un esquema que según alegó, viola la *Ley de Sustancias Controladas*, a los fines de generar un mayor beneficio económico y que ello le causó daños.

El Artículo 9 inciso (d) *Ley contra el Crimen Organizado*, *supra*, establece que la persona que sufra daños en sus negocio o propiedad por razón de una violación a las disposiciones del Artículo 3 de la Ley contra el Crimen Organizado, podrá demandar en el tribunal de justicia correspondiente y podrá recobrar compensación triple por concepto de los daños sufridos y los gastos incurridos en la demanda, incluyendo una suma razonable por concepto de honorarios de abogado. 25 LPRA sec. 971h.

Si bien el Art. 9 de la *Ley contra el Crimen Organizado*, *supra*, provee un remedio civil, para que dicha acción civil proceda es necesario alegar que el demandado incurrió en una actividad de crimen organizado contemplada por el Artículo 3, tales como un patrón de crimen organizado. A su vez el Artículo 2 de la *Ley contra el Crimen Organizado*, *supra* define

expresamente lo que constituye una actividad de crimen organizado. 25 LPRA sec.971a(b).

La definición que provee el Art. 2 (b) de la *Ley contra el Crimen Organizado, supra*, sobre lo que es una actividad de crimen organizado es una disposición de naturaleza penal que requiere ser analizado bajo el crisol del debido proceso de ley en materia penal. Cónsono con ello, la lista de delitos constitutivos de una actividad de crimen organizado es una lista *numerus clausus*. Interpretar lo contrario atenta contra el principio de legalidad consagrado en nuestro ordenamiento. *Véase* Art. 2 del Código Penal, 33 LPRA sec. 5002. Sobre esos extremos, es preciso destacar que la definición de "actividad de crimen organizado" que provee el Artículo 2 de la *Ley contra el Crimen Organizado*, *supra*, no incluye la falsificación, alteración y/o manipulación de pruebas de cannabis medicinal, el lavado de dinero ni  la alteración de rótulos adheridos a los empaques de sustancias controladas.

En *Costas Elena y otros v. Magic Sports y otros*, *supra* el Tribunal Supremo concluyó que la propia *Ley contra el Crimen Organizado* establece que los remedios o acciones de naturaleza civil provistos por este estatuto podrán instarse, independientemente de la acción penal u otro remedio disponible en ley y que la validez de una reclamación civil de compensación triple por concepto de daños al amparo de la Ley contra el Crimen Organizado  no está atada directamente al resultado de una acción penal relacionada, por lo que para que proceda esta causa de acción no es requisito *sine qua non* contar con una convicción criminal bajo la mencionada ley.

Ahora bien, la normativa jurisprudencial de *Costas Elena y otros v. Magic Sports y otros*, *supra* no tiene el alcance de eximir al demandante en una acción civil amparada en una alegada violación a la *Ley de Crimen Organizado*, de alegar en la demanda hechos constitutivos de actividad de crimen organizado por parte del demandado, según definidas en el Artículo 2 del estatuto. Independientemente de si existe o no una acción penal por

esos hechos alegados en la demanda, estos hechos tienen que incluir las alegaciones referentes a la actividad de crimen organizado, señalada en la demanda como causa directa de los daños reclamados. De lo contrario procede la desestimación de la acción civil toda vez que, como en el presente caso, la demanda deja de exponer una reclamación que justifica la concesión de un remedio al amparo de dicho estatuto invocado.

En el caso que nos ocupa, Novacann no ha logrado apuntar a jurisprudencia o fuente legal alguna que sostenga su postura de que la definición de lo que constituye actividad de crimen organizado que provee el Artículo 2 de la *Ley contra el Crimen Organizado* deba interpretarse ampliamente para incluir actividades que no están expresamente allí detalladas y de que proceda incluir dentro de la definición de actividad de crimen organizado cualquier acto prohibido por ley y sujeto a acusación criminal. Su contención no nos convence.

Los alegados actos de falsificación y alteración de resultados de pruebas de calidad de valores de *tetrahydrocannabidol* (THC), imputados por Novacann a Cannalytic en la *Primera Demanda Enmendada* no constituyen una actividad de crimen organizado. Aún tomados como ciertos todos los hechos bien alegados en la demanda presentada por Novacann, en estos la Apelante no alegó que Cannalytics ni los Apelados participaran de alguna actividad de crimen organizado, según definida por el Artículo 2 de la Ley contra el Crimen Organizado, Ley Núm. 33 -1978, supra, ni que tal participación le hubiese provocado un daño a la propiedad o negocio de la Apelante.

De otra parte, al tomar como ciertas las alegaciones generales y particulares de la demanda con respecto a la violación a la Ley Antimonopolística, *supra,* e interpretándolas de la manera más favorable a la parte apelante, concluimos que la desestimación de dicha causa de acción fue procedente en derecho. Por tanto, el segundo error tampoco se cometió. Dichas alegaciones no establecieron de manera directa cómo la Apelada infringió las disposiciones mencionadas. En particular, la Apelante

no incluyó, de manera sucinta y sencilla, las disposiciones para invocar violación al Artículo 2 del aludido estatuto, esto es: (1) la existencia de un contrato o concierto entre dos o más entidades separadas; (2) la restricción irrazonable del contrato o acuerdo en los negocios o en el comercio y; (3) que lo anterior ocurra en Puerto Rico. *Pressure Vessels P.R. v. Empire Gas P.R.*, supra. Además, tampoco satisfizo los criterios necesarios para establecer que la presunta conducta efectuada por la Apelada intentaba destruir la competencia injustamente; requisito indispensable para invocar el Artículo 4 de la Ley Antimonopolística*, supra*.

De otra parte, la demanda no hace alegación de hecho alguno sobre actuaciones de la parte apelada que constituyan poder monopolístico. Sabido es, que estas alegaciones son un requisito indispensable para que proceda una reclamación al amparo de los Artículos 2 y 4 de la Ley Antimonopolística, *supra.*

Con estos antecedentes, concluimos que no incidió el foro primario al desestimar la reclamación de la Apelante por dejar de exponer una reclamación que justificara la concesión de un remedio al amparo de la *Ley Contra el Crimen Organizado*, estatuto invocado por Novacann en la *Primera Demanda Enmendada*, objeto de desestimación en la Sentencia apelada.

IV.

Por los fundamentos anteriormente expuestos, los cuales hacemos formar parte de esta Sentencia, confirmamos la Sentencia apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones