ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XII

| | | |
|---|---|---|
| VERDE REAL DEVELOPMENT, LLC (VRD)<br><br>Apelado<br><br>v.<br><br>LUIS G. ARROYO OCASIO Y OTROS<br><br>Apelantes | TA2026CE00243 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso Núm.: CA2025CV02064<br><br>Sobre: Sentencia Declaratoria, Daños |

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto, el Juez Campos Pérez y la Jueza Trigo Ferraiuoli

Campos Pérez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de abril de 2026.

La parte demandada y peticionaria, Luis Germán Arroyo Ocasio, Julio Antonio Arroyo Ocasio, Carlos Enrique Arroyo Ocasio, Mayleen Arroyo Rivera, José Ramón Arroyo Rivera, Christopher Joel Gómez, James Benjamín Gómez y Lydia Inocencia Arroyo Sosa —quienes son miembros de las sucesiones de Germán Arroyo Rivera e Inocencia Ocasio Torrado— impugna la *Resolución Interlocutoria* emitida el 3 de febrero de 2026, notificada el día 6 siguiente, por el Tribunal de Primera Instancia, Sala Superior de Carolina (TPI). En el referido dictamen interlocutorio, entre otros pronunciamientos, el TPI rechazó una solicitud de traslado y declaró sin lugar varias solicitudes desestimatorias incoadas por los comparecientes.

**I.**

La presente causa se inició el 24 de junio de 2025, ocasión en que la parte demandante y recurrida, Verde Real Development LLC, instó una *Demanda* sobre sentencia declaratoria, daños y perjuicios.[1] En esencia, solicitó al TPI que decretara la nulidad de la *Sentencia* emitida en el caso

---

[1] Entrada 1 del caso CA2025CV02064 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

*Luis Germán Arroyo Ocasio v. A.M.C.E. Corporation*, CI2020CV00150, sobre cobro de dinero y ejecución de hipoteca, bajo el fundamento de fraude y falta de parte indispensable. Por igual, peticionó un resarcimiento de $1,500,000.00 en daños y el pago de $50,000.00 en honorarios por temeridad.

En el aludido caso CI2020CV00150,[2] presentado el 27 de octubre de 2020 ante la Sala Superior de Ciales, el Sr. Luis Germán Arroyo Ocasio compareció en capacidad de albacea y apoderado de las sucesiones y reclamó a A.M.C.E. Corporation la ejecución de una hipoteca voluntaria otorgada el 27 de diciembre de 1980, mediante la Escritura Pública 67 ante el Notario Carlos A. López-Lay Llavería, denominada *Segregación, Liberación, Cancelación Parcial de Hipoteca y Descripción del Resto*, a favor de sus padres, los acreedores-causantes Germán Arroyo Rivera e Inocencia Ocasio Torrado.[3]

Para evidenciar su acreencia, el señor Arroyo Ocasio presentó solamente el <u>anverso</u> de un Pagaré al portador, que ascendía a $95,850.00 a un 9% de interés anual y cuyo vencimiento se consignó expresamente para en o antes de 19 de junio de 1981. Fue autorizado ante el mismo Notario, por conducto de la Afidávit 3491 de 20 de agosto de 1979.[4] En su día, dicha obligación estuvo garantizada por una primera hipoteca[5] que gravó un predio de A.M.C.E. sito en Ciales, Finca 7759, denominada *Futuro Desarrollo*.[6]

Ahora, en la Escritura Pública 67, la hipoteca original de $95,850.00 se canceló parcialmente debido al pago de $47,925.00 por parte de A.M.C.E. El Notario dio fe de haber visto y devuelto el Pagaré e hizo constar que, bajo su firma y sello, en el <u>reverso</u> del instrumento negociable, escribió la siguiente nota:

---

[2] Tomamos conocimiento judicial del caso CI2020CV00150 SUMAC.
[3] Entrada 1 del caso CI2020CV00150 SUMAC.
[4] Véase, copia del anverso del Pagaré. Entrada 1 del caso CI2020CV00150 SUMAC.
[5] Escritura Pública 26 de 20 de agosto de 1979, ante el Notario López-Lay Llavería.
[6] Inscrita al tomo 162, folio 110 del Registro de la Propiedad de Manatí. Entrada 1 del caso CI2020CV00150 SUMAC.

Mediante escritura pública de esta misma fecha, otorgada en el notario público suscribiente, se segregó de la finca gravada por la hipoteca que garantiza este pagaré una parcela de 23.3709 cuerdas, quedando la parcela liberada de dicho gravamen hipotecario y reduciéndose el principal de la hipoteca que garantiza este pagaré por la suma de $47,925.00.

Es decir, mediante la Escritura Pública 67 se realizaron las siguientes operaciones sobre la Finca 7759: (1) segregación de un predio de 23.3709 cuerdas; (2) liberación de ese inmueble de la primera hipoteca; (3) cancelación parcial de la primera hipoteca de $95,850.00; y (4) constitución de hipoteca de $47,925.00 sobre el remanente de 3.7194 cuerdas de la Finca 7759.

Entonces, transcurridas unas cuatro décadas, durante las cuales fallecieron los acreedores-causantes,[7] el señor Arroyo Ocasio arguyó el impago a partir de 29 de diciembre de 1980; y reclamó el principal de $47,925.00 más los intereses pactados, costas y honorarios de abogado.

De la reclamación hipotecaria CI2020CV00150 y ese expediente se desprende también que seis años antes de instarse, el 4 de mayo de 2014, el Departamento de Estado emitió el *Certificado de Revocación del Certificado de Incorporación* de A.M.C.E. (66715). A tales efectos, se emplazó por edicto al deudor hipotecario, se le anotó la rebeldía y el 4 de junio de 2021, la Sala Superior de Ciales dictó *Sentencia en Rebeldía* y condenó a A.M.C.E. a pagar $174,392.66 por concepto de principal e intereses y $4,792.50 en costas y honorarios de abogado.[8]

Así las cosas, la Finca 7759 se adjudicó al señor Arroyo Ocasio en la primera subasta celebrada el 7 de diciembre de 2021.[9] El 27 de diciembre de 2022, no obstante, el Municipio de Ciales instó acción de expropiación forzosa del predio en el caso AR2022CV02285. Al presente, el caso continúa activo ante la Sala Superior de Arecibo.

---

[7] Germán Arroyo Rivera falleció el 26 de septiembre de 1987; e Inocencia Ocasio Torrado, el 13 de abril de 2002. Entrada 46 en el caso CI2020CV00150 SUMAC.
[8] Entrada 23 del caso CI2020CV00150 SUMAC.
[9] Entradas 34 y 36 del caso CI2020CV00150 SUMAC.

Con posterioridad, el 30 de agosto de 2023, el Notario Pablo García Pérez autorizó la Escritura Pública 51 de Venta Judicial, otorgada por el señor Arroyo Ocasio. Sin embargo, Verde Real alegó que la inscripción ante el Registro de la Propiedad resultó infructuosa, debido a sendas notificaciones de faltas al instrumento público. En particular, por la ausencia de fe pública notarial de la cancelación del Pagaré que garantizaba la hipoteca ejecutada y que, como albacea, requería presentarse una declaratoria de herederos o un testamento.[10]

Cuatro años después de la finalidad de la *Sentencia* en la Sala Superior de Ciales, a petición de parte, el 16 de mayo de 2025, se intituló otro dictamen como *Sentencia en Rebeldía Nunc Pro Tunc* para incluir la relación de herederos que, como albacea, el señor Arroyo Ocasio alegó representar.[11] La enmienda solicitada tuvo el fin de "redactar la escritura de venta judicial correctamente y se pueda presentar al Registro de manera que sea inscribible".

En lo que compete al caso presente, cabe señalar que de estos escritos judiciales se desprende que dos de los herederos demandantes residen en Nueva York y otra en Dakota del Norte.[12]

A base de los hechos anteriores, Verde Real alegó en su reclamación que el señor Arroyo Ocasio incurrió en acciones fraudulentas con el fin de apropiarse de una propiedad, en perjuicio del interés del demandante, lo que ameritaba la nulidad del dictamen. En específico, adujo ser parte indispensable del litigio CI2020CV00150, cuya ausencia transgredió el debido proceso de ley. Planteó que ejercía derechos de titular en el remanente de la Finca 7759 con conocimiento pleno del demandado. Explicó que en 2015 compró al Municipio de Ciales por $560,000.00 un proyecto desarrollado en su origen en la Finca 7759 (*Futuro Desarrollo)*, donde Verde Real se obligó a construir 112

---

[10] Véanse *Carta de Notificación* de 2 de julio de 2024 del Hon. Javier Vázquez Ortiz (asiento de presentación caducado); y *Carta de Notificación* de 14 de mayo de 2025 del Hon. José Riefkohl Soltero (asiento de presentación retirado), en Karibe, Finca 7759.
[11] Entradas 46-47 del caso CI2020CV00150 SUMAC.
[12] Del expediente CI2020CV00150 no surge la prestación de una fianza de no residente.

viviendas de interés social.[13] Al momento de la transacción, se representó que la finca adquirida (catastro 137-085-118-00-000) incluía el remanente de 3.7194 cuerdas, que fue parte del proyecto original desarrollado por la extinta Corporación de Renovación de Urbana y Vivienda (CRUV) y A.M.C.E. En dicho predio, Verde Real construyó dos residencias de interés social, con conocimiento del señor Arroyo Ocasio. Adujo que éste no interrumpió los trabajos, sino que se benefició de las mejoras e infraestructuras que realizó Verde Real.

Sostuvo el demandante que, en noviembre de 2019, por primera vez, el señor Arroyo Ocasio comunicó acerca del antes descrito gravamen hipotecario y que la parcela de 3.7194 cuerdas no formaba parte del predio destinado a las viviendas de interés social. Verde Real manifestó que, en aras de finiquitar la cuestión, solicitó la presentación del Pagaré original, pero el señor Arroyo Ocasio no lo produjo. Verde Real señaló que, sin darle aviso alguno, el demandado incoó el caso CI2020CV00150.

Como parte de sus alegaciones, Verde Real acotó que el Pagaré no sólo estaba vencido, sino que imputó al señor Arroyo Ocasio no ser tenedor de buena fe del instrumento negociable y haber hecho una representación incorrecta de tener en su poder el Pagaré original, vinculado a la hipoteca objeto de ejecución; así como ser el representante de los herederos. En suma, Verde Real solicitó la nulidad del dictamen del caso CI2020CV00150 por haberse emitido a costa del debido proceso de ley que cobija a Verde Real como parte indispensable, y por haberse obtenido mediante fraude al Tribunal. Apuntó que el demandado carecía de derecho para reclamar la acreencia hipotecaria en nombre de sus padres y que fraudulentamente se atribuyó la Finca 7759 y las mejoras efectuadas por el demandante de las cuales solicitó resarcimiento. Reclamó haber sufrido los siguientes daños: (1) pérdidas y atrasos de ventas de aproximadamente 20 unidades de vivienda por no menos de

---

[13] El predio fue cedido en 2012 al ayuntamiento por la Autoridad para el Financiamiento de la Vivienda en Puerto Rico.

$2,000,000.00; (2) costos aproximados en permisos, diseño, movimiento de tierra, infraestructura, electricidad y relocalización de líneas eléctricas y telecomunicaciones de $150,000.00; (3) dos unidades de vivienda construidas por un valor aproximado de $300,000.00; (4) administración y mantenimiento por aproximadamente $50,000.00; (5) costos adicionales aproximados por atrasos del proyecto, gastos legales y administrativos estimados en $100,000.00.

En lo que atañe al caso que nos ocupa, es meritorio mencionar que el demandante emplazó personalmente a los demandados, incluyendo al señor Arroyo Ocasio; y solicitó de manera oportuna la expedición de emplazamientos por edicto contra los tres demandados residentes fuera de Puerto Rico, a saber: Christopher Joel Gómez, James Benjamín Gómez y Lydia Inocencia Arroyo Sosa. De esta última, la parte demandante dijo conocer la dirección física y postal. El edicto se publicó el 11 de septiembre de 2025 en el periódico El Vocero de Puerto Rico.[14]

En respuesta, el 6 de octubre de 2025, los demandados emplazados personalmente en nuestra jurisdicción solicitaron el traslado del litigio a la Sala Superior de Ciales.[15] Verde Real se opuso y adujo que el pleito incoado en el TPI de Carolina respondía a la norma procesal de instar el pleito conforme la residencia de las partes demandadas o alguna de ellas, en referencia al señor Arroyo Ocasio, quien reside en Carolina.[16] Los demandados replicaron y adujeron que Verde Real era un invasor que no había mostrado un documento público que le acreditara como parte indispensable en el caso CI2020CV00150.[17] Dijeron que, al tratarse de un inmueble, el caso debía ventilarse en la Sala Superior de Ciales.

---

[14] Véanse las entradas 4-14 del caso CA2025CV02064 SUMAC.
[15] Entrada 15 del caso CA2025CV02064 SUMAC. Aun cuando la parte demandada y peticionaria compareció por separado en los escritos judiciales ante el TPI, todos están representados por el Lcdo. Carlos M. Sánchez La Costa.
[16] Entrada 20 del caso CA2025CV02064 SUMAC.
[17] Entrada 23 del caso CA2025CV02064 SUMAC.

En otros trámites, el 17 de octubre de 2025, Verde Real solicitó la anotación de rebeldía contra Christopher Joel Gómez, James Benjamín Gómez y Lydia Inocencia Arroyo Sosa.[18] Estos demandados, sin someterse a la jurisdicción, se opusieron y alegaron el incumplimiento de la Regla 4.6 de Procedimiento Civil, *Emplazamiento por edictos y su publicación, infra.*[19] En específico, impugnaron que de la declaración jurada no se establecen las explicaciones detalladas de las diligencias para encontrar la dirección de dichas partes; que el declarante no era un emplazador independiente, sino un representante del demandante; que en la *Orden* de emplazamiento por edicto no se incluyó a Christopher Gómez Arroyo ni se enviaron las copias del emplazamiento y la *Demanda* por correo certificado; así como que habían transcurrido 120 días sin emplazar a ciertos demandados. Por ende, imputó la nulidad de los emplazamientos y solicitó la desestimación de la reclamación.

Verde Real instó una oposición,[20] en la cual expuso que el expediente electrónico mostraba que, el 11 de septiembre de 2025, se publicó en un periódico de circulación general el edicto de la *Demanda* de autos para emplazar a Christopher Joel Gómez, Lydia Inocencia Arroyo Sosa y Christopher Joel Gómez. Manifestó que la Regla 4.6 de Procedimiento Civil, *infra,* no exigía diligencias adicionales cuando se conoce que los demandados residen fuera de Puerto Rico. Añadió que el comportamiento ulterior de los propios demandados evidenciaba que tuvieron conocimiento efectivo del pleito y decidieron permanecer ocultos. Verde Real rechazó también que el término jurisdiccional de 120 días hubiera transcurrido, toda vez que la *Orden* y los emplazamientos por edicto fueron expedidos el 20 de agosto de 2025, fecha en que comenzó a cursar el plazo, y el edicto se publicó el 11 de septiembre de 2025.[21] Por igual, insistió en la anotación de rebeldía.

---

[18] Entrada 17 del caso CA2025CV02064 SUMAC.
[19] Entrada 18 del caso CA2025CV02064 SUMAC.
[20] Entrada 22 del caso CA2025CV02064 SUMAC.
[21] Entradas 9 y 12 del caso CA2025CV02064 SUMAC.

Los demandados Christopher Joel Gómez, James Benjamín Gómez y Lydia Inocencia Arroyo Sosa, sin someterse a la jurisdicción, incoaron una nueva solicitud de desestimación el 7 de enero de 2026, que en resumen reiteró los imputados incumplimientos del demandante con la Regla 4.6 de Procedimiento Civil, *infra*.[22] Verde Real expuso su oposición.[23]

Además, el 17 de noviembre de 2025, el resto de los demandados emplazados de manera personal en nuestra jurisdicción presentaron una petición desestimatoria al alegar que la *Demanda* no justificaba la concesión de un remedio y solicitaron la imposición de sanciones. Adujeron en la falta de un instrumento público de Verde Real, la ausencia de legitimación activa del demandante y la prescripción de la causa.[24]

Verde Real se opuso y defendió su derecho de reclamo.[25] Afirmó que existía el instrumento público por virtud del cual realizó las obras de interés social y de manera aparente y razonable en el predio de 3.7194 cuerdas.[26] Aseveró que ostentaba legitimación activa, ya que, distinto a las imputaciones de invasión, su ocupación respondió al negocio jurídico con el Municipio de Ciales en 2015, los permisos de construcción, los planos y los documentos oficiales. Acotó que el desarrollo del proyecto de vivienda de interés social se ejecutó a la vista de todos durante cuatro años. Enunció: "Si el Municipio incurrió en un error en la cadena de titularidad —por una segregación previa y oculta entre A.M.C.E. y los padres de Arroyo— ese error no elimina la buena fe ni el justo título aparente que sustentó la entrada en posesión de Verde Real". En cuanto a la prescripción, planteó que su causa de acción nació el 16 de mayo de 2025, fecha de la *Sentencia en Rebeldía Nunc Pro Tunc*, ocasión en que

---

[22] Entrada 34 del caso CA2025CV02064 SUMAC.
[23] Entrada 39 del caso CA2025CV02064 SUMAC.
[24] Entrada 28 del caso CA2025CV02064 SUMAC.
[25] Entrada 30 del caso CA2025CV02064 SUMAC.
[26] En referencia a la Escritura Pública 2 de 24 de junio de 2015, *Compraventa y Constitución de Hipoteca*, ante la Notaria María Elisa Martínez Avilés. Entrada 1 en el caso AR2022CV02285 SUMAC.

advino en conocimiento del daño y quiénes lo causaron. Igualmente, defendió la plausibilidad de sus alegaciones y apuntó sobre la improcedencia de la petición de sanciones. Luego, los demandados instaron réplica, en la que reprodujeron sus previos argumentos;[27] y Verde Real presentó una dúplica.[28]

Justipreciadas las posturas de los contendientes, el 6 de febrero de 2026, el TPI notificó la *Resolución Interlocutoria* recurrida, en la que expresó:

> ESTA SALA MANTENDRÁ EL CASO TODA VEZ QUE LA CONTROVERSIA A RESOLVER NO IMPLICA ADJUDICAR TITULARIDAD.
>
> NO HA LUGAR A LA SOLICITUD DE DESESTIMACIÓN POR DEFECTOS EN EL EMPLAZAMIENTO. PARTE DEMANDANTE REFIERA AL TRIBUNAL A LA CONSTANCIA DEL EMPLAZAMIENTO DILIGENCIADO DE JAMES BENJAMÍN GÓMEZ EN SUMAC O SOMETA EVIDENCIA DEL MISMO EN 10 DÍAS.
>
> NO HA LUGAR A LA SOLICITUD DE DESESTIMACIÓN EN LOS MÉRITOS A ESTAS ETAPAS DEL CASO.
>
> SOBRE LA SOLICITUD DE ANOTACIÓN DE REBELDÍA, PARTES DEMANDADAS EN 10 DÍAS PRESENTEN ALEGACIÓN RESPONSIVA SO PENA DE CONCEDER LO SOLICITADO.[29]
>
> NO HA LUGAR A LA SOLICITUD DE SANCIONES.

Inconforme, la parte demandada presentó el auto de *certiorari* del epígrafe el 25 de febrero de 2026; y esbozó los siguientes señalamientos de error:

> EL TPI COMETIÓ UN ERROR LEGAL AL PERMITIR LOS ERRORES CRASOS COMETIDOS POR VERDE REAL EN VIOLACIÓN A LA REGLA 4.6 DE PROCEDIMIENTO CIVIL Y REHUSARSE A DESESTIMAR LA DEMANDA.
>
> ERRÓ EL TPI AL REHUSARSE A ORDENAR EL TRASLADO SEGÚN REQUERIDO POR LA REGLA 3.3 DE PROCEDIMIENTO CIVIL.
>
> ERRÓ EL TPI AL NO DESESTIMAR LA DEMANDA ANTE LA AUSENCIA DE UN INSTRUMENTO PÚBLICO COMO REQUIERE EL CÓDIGO CIVIL PARA SOSTENER LAS

---

[27] Entrada 33 del caso CA2025CV02064 SUMAC.
[28] Entrada 38 del caso CA2025CV02064 SUMAC.
[29] El 4 de marzo de 2026, los demandados instaron *Contestación a Demanda y Reconvención*; entrada 51 del caso CA2025CV02064 SUMAC.

ALEGACIONES DE VERDE REAL SOBRE LA FINCA 7759 Y LA EXISTENCIA DEL CASO DE EXPROPIACIÓN RADICADO POR EL MUNCIPIO DE CIALES PARA EXPROPIAR ESA MISMA FINCA 7759.

En cumplimiento de *Resolución*, Verde Real acudió mediante *Oposición a expedición de certiorari*. De manera excepcional, aceptamos la *Réplica* y la *Dúplica* de las partes litigantes. Con el beneficio de ambas comparecencias, procedemos a resolver.

**II.**

**A.**

La Regla 4.6 de Procedimiento Civil, 32 LPRA Ap. V, R. 4.6, gobierna todo lo relacionado con el emplazamiento por edictos y su publicación. El emplazamiento es el mecanismo procesal de notificación, mediante el cual el tribunal adquiere jurisdicción sobre la persona del demandado, de forma tal que éste quede obligado por el dictamen que finalmente se emita. Su propósito principal es notificar al demandado, a grandes rasgos, de que se ha instado una acción judicial en su contra, para así garantizarle su derecho a ser oído y defenderse si así lo desea. Los requisitos para el emplazamiento son de cumplimiento estricto. *Rivera v. Jaume*, 157 DPR 562, 575 (2002); *Ross Valedón v. Hosp. Dr. Susoni et al.*, 213 DPR 481, 487-488 (2024). De esta forma, el emplazamiento "representa el paso inaugural del debido proceso de ley que viabiliza el ejercicio de la jurisdicción judicial". *Pérez Quiles v. Santiago Cintrón*, 206 DPR 379, 384 (2021).

Como se sabe, las normas procesales civiles permiten en circunstancias específicas el mecanismo de emplazamiento por edicto. *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1005 (2021). Por ejemplo: (1) **cuando la persona natural a ser emplazada está fuera de Puerto Rico**; (2) cuando se trata de una corporación extranjera sin agente residente en nuestra jurisdicción; (3) aun cuando la persona a emplazar se encuentre en Puerto Rico, pero no puede ser localizada; (4) o ésta se oculta para no ser emplazada. *Rivera v. Jaume, supra*, pág. 576.

En lo que compete al caso del título, sobre demandados que residen fuera de Puerto Rico, el Tribunal Supremo de Puerto Rico ha pautado:

> En los casos en que **el demandado se encuentre fuera de Puerto Rico** y la parte demandante **ignora la dirección** del demandado fuera de Puerto Rico, **se exige prueba de las diligencias específicas para localizar al demandado** antes de expedir el emplazamiento por edicto y relevar al demandante del envío por correo de los documentos pertinentes. Por el contrario, cuando el demandado se encuentra fuera de Puerto Rico, y al demandante le **consta el lugar específico donde éste se encuentra** y así lo informa al tribunal, **no se requiere la comprobación de diligencias vigorosas** y honesto esfuerzo para citarle personalmente, y **es compulsorio el envío por correo certificado con acuse de recibo de la copia de la demanda, la orden para emplazar mediante edictos y el edicto mismo**. (Énfasis nuestro). *Id.,* págs. 576-577.

Es sabido que la Regla 4.6 de Procedimiento Civil, *supra*, exige, que a los diez días siguientes a la publicación del edicto, se dirija a la parte demandada una copia de la demanda y el emplazamiento, por correo certificado con acuse de recibo al lugar de su última dirección física o postal conocida, "a no ser que se justifique mediante una declaración jurada que a pesar de los **esfuerzos razonables realizados, dirigidos a encontrar una dirección física o postal de la parte demandada**, con expresión de éstos, no ha sido posible localizar dirección alguna de la parte demandada, en cuyo caso el tribunal excusará el cumplimiento de esta disposición". (Énfasis nuestro). Regla 4.6 de Procedimiento Civil, *supra.* Finalmente, al solicitar el emplazamiento por edictos, el término improrrogable de 120 días para emplazar comienza a transcurrir cuando se autoriza y se expide el emplazamiento por edicto. *Sánchez Ruiz v. Higuera Pérez, et al.*, 203 DPR 982, 994 (2020). Para ello, la parte demandante tiene que solicitar su expedición antes de que finalice el término para diligenciar el emplazamiento personal. *Id.*

**B.**

La desestimación es un pronunciamiento judicial que resuelve el pleito de forma desfavorable para el demandante sin celebrar un juicio en su fondo o en los méritos. S.*L.G. Sierra v. Rodríguez*, 163 DPR 738,

745 (2005). De este modo, la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, permite que el demandado solicite la desestimación de la demanda, antes de presentar una contestación. Los fundamentos para solicitar la desestimación son las siguientes: (1) falta de jurisdicción sobre la materia; (2) **falta de jurisdicción sobre la persona**; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) **dejar de exponer una reclamación que justifique la concesión de un remedio**; y (6) dejar de acumular una parte indispensable. *Costas Elena y otros v. Magic Sport y otros,* 213 DPR 523, 533 (2024); *González Méndez v. Acción Soc.,* 196 DPR 213, 234 (2016).

El Tribunal Supremo de Puerto Rico ratificó en *Costas Elena y otros v. Magic Sport y otros, supra,* págs. 533-534, las normas que rigen la desestimación de una demanda basada en el inciso 5 de la Regla 10.2 de Procedimiento Civil, *supra.* Estas guías son las siguientes:

(1) La desestimación procede cuando, de las alegaciones de la demanda, surge que alguna de las defensas afirmativas derrotará la pretensión del demandante.

(2) Al evaluar una moción de desestimación al amparo de la Regla 10.2 (5), *supra,* **el tribunal tiene que tomar como ciertos todos los hechos bien alegados en la demanda, aseverados de manera clara y concluyente y que de su faz no dan margen a dudas**.

(3) Los tribunales que atienden una moción basada en la Regla 10.2, *supra,* tienen que **evaluar las alegaciones de la demanda conjuntamente, y de la forma más favorable para el demandante**.

(4) **Toda duda debe resolverse a favor del demandante**.

(5) El demandado tiene que establecer con toda certeza que el demandante no tiene derecho a remedio alguno, bajo cualquiera estado de Derecho que se pudiera probar en apoyo a su reclamación. Véase, además, *Eagle Security v. Efron Dorado et al,* 211 DPR 70, 84 (2023).

En otras palabras, a los fines de disponer de una moción de desestimación bajo la Regla 10.2 de Procedimiento Civil, *supra,* es norma asentada que el tribunal está obligado a dar por ciertas y buenas todas las alegaciones fácticas de la demanda que hayan sido aseveradas de manera clara. *Costas Elena y otros v. Magic Sport y otros, supra,* pág.

533; *Torres Torres v. Torres et al.*, 179 DPR 481, 501 (2010); *Perfect Cleaning v. Cardiovascular*, 172 DPR 139, 149 (2007); *Colón v. Lotería*, 167 DPR 625, 649 (2006). Luego de ello, determinará si, a base de esos hechos que tomó como ciertos, la demanda establece una reclamación plausible que justifique la reclamación de un remedio. *Costas Elena y otros v. Magic Sport y otros, supra*, pág. 534. De modo que, si al así hacerlo se establece con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de derecho que pueda ser probado en apoyo a su reclamación, procederá la desestimación solicitada. *Id.*; *Rivera Sanfeliz et al. v. Jta. Dir. First Bank,* 193 DPR 38, 49 (2015); *Ortiz Matías et al. v. Mora Devevelopment*, 187 DPR 649, 654 (2013). Ahora bien, nuestro más alto foro ha resuelto que dicha medida drástica **procede solamente en casos extremos**, pues conlleva la privación a un litigante de su día en corte. *Costas Elena y otros v. Magic Sport y otros, supra,* pág. 534; *Rosario v. Nationwide Mutual*, 158 DPR 775, 780 (2003).

### III.

Como cuestión de umbral, para determinar si expedimos o denegamos el presente recurso de *certiorari*, realizamos un examen objetivo al palio de la Regla 52.1 de Procedimiento Civil, *Procedimientos*, 32 LPRA Ap. V, R. 52.1, seguido de un análisis discrecional al amparo de la Regla 40*, Criterios para la expedición del auto de certiorari*, del Reglamento del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 62-63, 215 DPR __ (2025). Según lo reseñado, nos encontramos ante la denegación de unas mociones de carácter dispositivo, al amparo de la Regla 10.2 de Procedimiento Civil, *supra*, lo cual nos confiere autoridad para atender los asuntos planteados. En cuanto al ejercicio de nuestra discreción, opinamos que procede nuestra intervención parcial con el dictamen recurrido. Veamos.

En el **primer señalamiento de error**, la parte peticionaria aduce que el TPI erró al permitir los errores cometidos por Verde Real en

violación a la Regla 4.6 de Procedimiento Civil, *supra*, y al rehusarse a desestimar la *Demanda* contra los demandados que residen fuera de Puerto Rico. Argumenta que la *Declaración Jurada* suscrita el 5 de agosto de 2025 por Jorge Rodríguez Benítez, representante del recurrido, sobre que buscó en un archivo en la oficina de Verde Real es insuficiente. Fundamenta que, al hacer diligencias pertinentes, se requiere una búsqueda razonable y una explicación detallada de las gestiones realizadas en la indagación de una dirección.

Por su parte, Verde Real plantea que las diligencias pertinentes a las que alude la Regla 4.6 de Procedimiento Civil, *supra*, se refieren solamente "cuando se cree que la persona a emplazar se encuentra en Puerto Rico y no puede ser localizada". Por ello, colige que, como siempre supo que estas partes no residen en Puerto Rico, entonces, "no hay obligación de realizar diligencias locales fútiles". Lógicamente, al no tratar de investigar y desconocer la dirección, tampoco estos demandados recibieron copia de la *Demanda* y el edicto.

De la *Declaración Jurada* 67,596 autenticada por el Notario Isabelino Ramos Cepeda, en lo pertinente, se desprende lo siguiente:

. . . . . . . .

4. Que entre los miembros de la Parte Demandada, se encuentran personas que, según la última información que constan en nuestro récord de negocio y conocimiento personal, residen fuera de Puerto Rico.

5. Que los Co-Demandados que a nuestro mayor conocimiento residen fuera de la jurisdicción son:

- Lydia Inocencia Arroyo Sosa, en North Dakota, USA;
- James Benjamín Gómez, en New York, USA;
- Christopher Joel Gómez, en New York, USA.

6. En el caso de la Co-Demandada, Lydia Inocencia Arroyo Sosa, advenimos en conocimiento, posterior a la presentación de la Demanda en controversia, que ésta reside en la siguiente dirección: [    ] Lewis Rd. NW, Mandan, ND 58554; su dirección postal es [    ] Bell St., Bismarck, ND 58501 y su número de teléfono es (701) [    ]. (Información suprimida intencionalmente).

7. Que en los archivos administrativos de Verde Real Development LLC no contamos con dirección postal o

residencial de los Co-Demandados James Benjamín Gómez y Christopher Joel Gómez.

8. Que respecto a la señora Arroyo Sosa, la única información sobre su dirección postal y residencia es la provista en el párrafo 6 de esta declaración jurada y la cual advenimos en conocimiento recientemente.

. . . . . . . .

De un examen no prevenido del testimonio jurado, es nuestro criterio que Verde Real no ejecutó las diligencias específicas requeridas para indagar las localizaciones de los demandados que se encuentran fuera de Puerto Rico, cuando la parte demandante ignora sus direcciones, como ocurrió con Christopher Joel Gómez y James Benjamín Gómez. Aun cuando en el edicto publicado, en efecto, aparecen los nombres de éstos, lo cierto es que, previo a ello, en la *Declaración Jurada*, únicamente surge que el señor Rodríguez Benítez se limitó a buscar en los propios archivos administrativos de Verde Real. Ello así, porque entendió que no era necesario justificar que el TPI lo relevara de enviar la copia de la *Demanda* y el edicto a estas partes.

Según esbozamos antes, para eximir a Verde Real del envío por correo certificado con acuse de recibo de la copia de la *Demanda* y el edicto publicado a ambos demandados, el ordenamiento jurídico exige que demuestre en detalle las diligencias realizadas e infructuosas para identificar las respectivas direcciones de estos peticionarios. A modo de ejemplo, búsquedas en la internet, según sugieren los peticionarios.

En consecuencia, visto que Verde Real incumplió con el trámite de acreditar las diligencias específicas para localizar a los demandados residentes en Nueva York; y el término para emplazar por edicto conforme a derecho expiró el 18 de diciembre de 2025, procede la desestimación, sin perjuicio, de la causa de acción en contra de Christopher Joel Gómez y James Benjamín Gómez.

En el caso de Lydia Inocencia Arroyo Sosa, el declarante testimonió que conocía la dirección física y postal de ésta. Por consiguiente, Verde Real no tenía obligación de comprobar las diligencias para emplazarla

por edicto. No obstante, del expediente electrónico del caso no surge que Verde Real haya acreditado al TPI el envió oportuno y compulsorio de la copia de la *Demanda* y el edicto publicado dirigidos a la última residencia conocida en Dakota del Norte. A ese respecto, so pena de desestimación sin perjuicio a favor de la señora Arroyo Sosa, procede que Verde Real someta la informacion del sistema de correo pertinente para que así se dé por cumplido el mandato del segundo párrafo de la *Resolución Interlocutoria* recurrida.[30]

En el **segundo señalamiento de error**, los peticionarios alegan que el TPI incidió al rehusarse a ordenar el traslado a la Sala Superior de Ciales, en observancia a la Regla 3.3 de Procedimiento Civil, *Pleitos que afectan propiedad inmueble*, 32 LPRA Ap. V, R. 3.3. En particular, indican que el 28 de octubre de 2025 el TPI ordenó el traslado, en referencia a la entrada 25,[31] y luego reconsideró *sua sponte* su *Orden* y mantuvo el caso ante su atención, ya que la controversia no implicaba la adjudicación de titularidad. Sostienen los peticionarios que ello constituyó un error de derecho al argüir que la competencia corresponde a la Sala Superior de Ciales. Al respecto, Verde Real niega que el pleito trate sobre asuntos vinculados a los derechos reales, sino a una acción independiente de nulidad de sentencia, daños y perjuicios.

Además, en el **tercer y último señalamiento de error**, la parte peticionaria expone que el TPI se equivocó al no desestimar la *Demanda* ante la ausencia de un instrumento público para sostener las alegaciones de Verde Real sobre la Finca 7759, como requiere el Código Civil; y la existencia del caso de expropiación del mismo predio. Expresa que el hoy derogado Artículo 1232 del Código Civil de 1930, 31 LPRA ant. sec.

---

[30] Téngase presente que, en los casos de alegados daños y perjuicios extracontractuales, los cocausantes no constituyen partes indispensables, cuya falta de acumulación conlleve la desestimación de la acción, toda vez que un deudor solidario no es parte indispensable. *Bonilla Sánchez v. Orta y otros*, 2026 TSPR 32, 218 DPR __ (2026); Op. de 30 de marzo de 2026, Hon. Kolthoff Caraballo.

[31] La entrada 25 del caso CA2025CV02064 SUMAC comprende una notificación en que el TPI refiere a las partes a una *Orden de Traslado* que no consta en el expediente electrónico.

3453,[32] exigía un instrumento público para la transferencia de dominio de bienes inmuebles y no representaciones verbales. Dice que Verde Real no compró la 7759, por lo que es un invasor y alude a cuestiones del caso de expropiación ante la Sala Superior de Arecibo. Verde Real opone el argumento de que, en esta etapa del litigio, el análisis jurídico procedente es si existe o no una reclamación plausible, justiciable y jurídicamente reconocible que impida la desestimación temprana del caso.

Por su relación en la disposición de ambos errores, los discutimos en conjunto.

En este caso, en 1981 y por virtud de la Escritura Pública 67, A.M.C.E. segregó de su Finca 7759 *Futuro Desarrollo* un predio de unas 23.3709 cuerdas. El remanente de la Finca 7759, cuya cabida conforma 3.7194 cuerdas, quedó gravado por hipoteca, para garantizar una obligación dineraria de $47,925.00, conforme el reverso del Pagaré al portador en disputa.

En 2015, el recurrido compró una finca de 23.3709 cuerdas al Municipio de Ciales, mediante la Escritura Pública 2,[33] para culminar la construcción de residencias de interés social. Explicó que se le entregaron los planos "as-built", documentos, memoria de diseño, alineamientos, servidumbres y componentes del proyecto, en cuya totalidad aparecía la parcela de 3.7194 cuerdas como parte integral del proyecto. Afirmó que esa representación creó una apariencia razonable de titularidad que, como comprador diligente y razonable, aceptó de buena fe.

Durante cuatro años, Verde Real, en efecto, realizó las obras de construcción, incluyendo dos residencias en el predio de 3.7194 cuerdas. Esto, según aseveró, con el conocimiento del señor Arroyo Ocasio. En

---

[32] Similar a la disposición vigente, Artículo 1245 del Código Civil de 2020, 31 LPRA sec. 9792.

[33] Véase, nota al calce 26 de este dictamen.

2019, el peticionario comunicó al recurrido la presunta obligación dineraria, pero sin mostrarle el Pagaré original. En 2020, incoó el pleito CI2020CV00150 para ejecutar la hipoteca de 1981.

Contrario a lo alegado por los peticionarios, Verde Real manifiesta que sí ostenta un instrumento público de compraventa válido y que sirvió como fundamento objetivo para entrar en posesión de buena fe, desarrollar infraestructura y construir las dos unidades de vivienda de interés social en el remanente de la Finca 7759, a sabiendas del señor Arroyo Ocasio. La reclamación dineraria extracontractual de Verde Real contra la parte peticionaria, precisamente, se asienta en la infraestructura construida. Por ende, demuestra tener un interés jurídico y económico cierto.

La Regla 3.3 de Procedimiento Civil, *supra*, establece que "l]os pleitos en relación con el título o algún derecho o interés en bienes inmuebles deberán presentarse en la sala correspondiente a aquella en que radique el objeto de la acción, o parte del mismo". La Regla 3.5, *Pleitos según la residencia de las partes*, 32 LPRA Ap. V. R. 3.5, dispone que, salvo determinadas excepciones, "el pleito deberá presentarse en la sala en que tengan establecidas sus residencias las partes demandadas, o alguna de ellas".

En la causa del título, el objeto de la acción civil versa sobre una sentencia declaratoria y la cuantiosa reclamación pecuniaria de daños extracontractuales. Las alegaciones de Verde Real, empero, no inciden sobre la titularidad de la Finca 7759, sino sobre las presuntas representaciones falsas y manipulaciones imputadas al señor Arroyo Ocasio en el caso CI2020CV00150, en calidad de albacea y apoderado de las sucesiones de los acreedores-causantes; así como la alegación de falta de parte indispensable y violaciones al debido proceso de ley, mediante las cuales Verde Real adujo que los peticionarios obtuvieron a su favor la *Sentencia en Rebeldía Nunc Pro Tunc* el 16 de mayo de 2025.

Luego de un puntilloso análisis del expediente, vemos que la determinación judicial que en su día se emita no incidirá sobre la titularidad de la Finca 7759. De hecho, conforme con la trilogía de litigios involucrados, se sabe que la Finca 7759 fue expropiada por el Municipio de Ciales en el caso AR2022CV02285.[34] De otro lado, como se mencionó, el señor Arroyo Ocasio reside en Carolina y, de acuerdo con las normas procesales, la acción civil personal se instó en el tribunal situado en ese municipio porque allí reside, al menos, uno de los demandados. Así, pues, concluimos que el TPI no erró al reconsiderar a instancia propia y variar la decisión de traslado para continuar dirimiendo el pleito de marras, bajo el argumento de que no tiene que adjudicar titularidad alguna.

En cuanto a la desestimación solicitada, debemos recalcar que la Regla 10.2 de Procedimiento Civil, *supra*, y su jurisprudencia interpretativa mandatan al juzgador a tomar como ciertas las alegaciones fácticas de la reclamación, que hayan sido aseveradas de manera clara y concluyente; así como a resolver toda duda a favor del demandante. Ciertamente, Verde Real esbozó alegaciones plausibles en su *Demanda* que justifican su día en corte, por lo que concedemos deferencia a la decisión del TPI de no desestimar el pleito en los méritos, en una etapa tan temprana del caso. Como se conoce, este tribunal intermedio no interviene con las determinaciones emitidas por el foro primario ni sustituye su criterio discrecional, "*salvo que se pruebe que dicho foro actuó con prejuicio o parcialidad, incurrió en craso abuso con el ejercicio de la discreción, o que incurrió en error manifiesto*". (Cursivas en el original). *Citibank et al. v. ACBI et al.*, 200 DPR 724, 736 (2018).

---

[34] La facultad de expropiar es un atributo inherente a la soberanía del Estado, cuyas únicas limitaciones reconocidas son que la propiedad se dedique a un fin público y se le satisfaga al demandado una justa compensación. *Mun. de Guaynabo v. Adquisición m²*, 180 DPR 206, 219 (2010). A esos efectos, el 1 de octubre de 2025, el Hon. Javier Vázquez Ortiz inscribió en la Finca 7759 la cancelación de hipoteca por prescripción por el valor de $95,850.00 a favor de A.M.C.E. La expropiación forzosa de la Finca 7759 por $30,500.00 se inscribió el 8 de octubre de 2025 (inscripción 3). El Hon. Arsenio Ramos Hernández inscribió el 2 de febrero de 2026 el traspaso por $1.00 de la Finca 7759 a Verde Real (inscripción 4). Refiérase al caso activo *Municipio de Ciales v. A.M.C.E. y otros*, AR2022CV02285 SUMAC y a las constancias registrales en Karibe.

**IV.**

Por los fundamentos expuestos, los cuales hacemos formar parte de este dictamen, expedimos el auto discrecional de *certiorari* solicitado y **confirmamos en parte** la *Resolución Interlocutoria* impugnada en lo concerniente a la continuación del litigio en la Sala Superior de Carolina y a la negativa de desestimar la *Demanda* en sus méritos, contra los demandados debidamente emplazados.

Al amparo de la Regla 4.6 de Procedimiento Civil, *supra*, **revocamos en parte** el dictamen impugnado. Consecuentemente, desestimamos, sin perjuicio, la reclamación civil en contra de **Christopher Joel Gómez** y **James Benjamín Gómez**.

Con relación a la Sra. Lydia Inocencia Arroyo Sosa, devolvemos el caso ante la consideración del foro recurrido para que Verde Real Development, LLC acredite el envío oportuno por correo certificado con acuse de recibo de la copia de la *Demanda* y el edicto publicado a la dirección informada de la señora Arroyo Sosa.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones